419 So.2d 165 (1982)
Samuel CALLAHAN, Garrett Johnson, John Dale, Tom Common, R. James Matthews, Eddie James Carthan and David McLaurin
v.
STATE of Mississippi.
No. 53361.
Supreme Court of Mississippi.
August 18, 1982.
*166 Sanders, Sanders & Clark, Alix H. Sanders, Greenwood, McTeer & Bailey, Charles Victor McTeer, Greenville, for appellants.
Bill Allain, Atty. Gen. by Wayne Snuggs, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, BOWLING and DAN M. LEE, JJ.
BOWLING, Justice, for the Court:
This cause involves seven appellants who were tried jointly in the Circuit Court of Holmes County for the crime of aggravated assault on a police officer acting within the scope of his duty. Initially, there were eight indictees. One met his death prior to trial. The seven appellants were tried jointly with each being convicted of the lesser offense of simple assault on a police officer acting within the scope of his duty. A conviction of this offense carries a maximum statutory penalty of five years imprisonment and a $1,000 fine. Mississippi Code Annotated, Section 97-3-7 (1972).
Upon conviction by a jury the following sentences were given appellants by the lower court:
*167 Samuel Callahan, three years in the Department of Corrections with all suspended and $500 fine;
John Dale, three years in the Department of Corrections with all suspended and $500 fine;
Tom Common, three years in the Department of Corrections with all suspended and $500 fine;
R. James Matthews, three years in the Department of Corrections with all suspended and $500 fine;
Garrett Johnson, three years in the Departments of Corrections with all suspended and $500 fine;
David McLaurin, three years in the Department of Corrections with all suspended and $1,000 fine; and
Eddie James Carthan, three years in the Department of Corrections.
At the outset, primarily because of the extensive publicity given this case, we need to explain the function of this Court as an appellate court. It is our duty and obligation and we are restricted to consider only that which appears in the record made in the trial court and brought before us. Regardless of the extensive publicity, numerous letters and cards received by the court and any motivation therefor, we state without hesitation or reservation that the cause has been fully, fairly and adequately considered under the record before us.
The record reveals that the Town of Tchula, Mississippi, has been beset with confusion and troubles for some time. The incidents leading to the conviction of appellants occurred on the night of April 30 and the early morning of May 1, 1980. At sometime around the first of April, the exact date not being shown in the record, the police department, consisting of four or five policemen, quit their jobs because of not being paid. James Harris, who had been a member of the police department approximately four years, was an exception. He remained on his job.
The Town of Tchula operated under what is known as a "code charter." This is the statutory authority for the operation of a town with a population under 10,000. [Code, § 21-3-1, et seq. (1972)]. The governing body of the town consisted of a mayor and five aldermen, all elected. The statutes provide that the board of aldermen may conduct the business of the municipality at either a regular or special meeting, with the mayor having the deciding vote in the case of an equal division among the aldermen present and voting. A special meeting of the board and mayor may be called by the mayor or any two aldermen by giving written notice served on each of the governing officials.
On the morning of April 30, 1980, two of the aldermen called a special meeting for 8 p.m. that evening. Undisputedly, the statutorily required written notice was served on each of the aldermen and the mayor. There is quite a bit of confusion as to everything that occurred at the special meeting, part of which was had in the open part of town hall, after which a closed session was called in the office of the town clerk. It appears that two matters were placed on the agenda by the written special called notice: to-wit, an election of a mayor pro-tem and a chief of police. The inconsistencies as to what occurred during the closed meeting shall be discussed later under the various assignments of error.
As a result of the special meeting, one Jim Andrews who had been police chief [formerly town marshal] for ten years at a prior time, assumed the duties of police chief at about ten o'clock the night of April 30, the night of the meeting. One of the many inconsistencies is the manner and authority under which this was done, and evidence about this as reflected in the record shall be discussed later.
Appellant Mayor Eddie James Carthan received notice at either his home or place of business regarding the fact that Andrews was then occupying the police department as chief of police. It is admitted without dispute that Carthan then contacted the co-indictees and told them to come to him at once; there was a serious situation that needed to be corrected. Appellants *168 John Dale and James Matthews were then members of the police department. Appellant David McLaurin was a member of the Board of Aldermen. The remaining appellants were what Carthan designated as "auxiliary policemen." All of these people were instructed by Carthan to bring weapons, and all did so. This entourage, admittedly headed by Carthan, went to the town hall, which as stated included the police department, where the incidents giving rise to this cause occurred.
Appellants jointly propound the following assignments of error:
I. The court erred in denying defendants' Motion to Quash the Indictment on grounds the defendants' activities were privileged and did not constitute a crime.
II. The court erred in not granting appellants' Instruction for a directed verdict.
III. The court erred in denying defendants' motion for a directed verdict or a new trial because of discrepancies in the jury's verdict.
IV. The court erred in granting state instruction numbers 2 and 4.
V. The court erred in denying defendants' instruction numbers 2, 3, 6, 7, 8, 9 and 10.
VI. The court erred in that it improperly instructed the jury on inclusion of a lesser included offense.
VII. The verdict of the jury is against the overwhelming weight of the evidence.
VIII. The verdict of the jury was not unanimous.
The motion to quash the indictment was based on the grounds that appellant Mayor Carthan was at the time of the incidents giving rise to the indictment acting in his capacity as mayor; that appellant David McLaurin was acting in his official capacity as alderman; the remaining indictees were policemen and auxiliary policemen and under the charge and direction of Mayor Carthan; that the state arbitrarily chose to prosecute the charge regarding the alleged assault on policeman James Harris which was prejudicial to appellants and that appellants were bound over to the grand jury by a justice court judge related to Andrews.
We could dispose of this assignment of error by holding that it was not a proper pleading, as it was for the purpose of testing the sufficiency of the indictment. This is prohibited by prior authorities, including State v. Grady, 281 So.2d 678 (Miss. 1973). In dealing with this appeal, however, we shall discuss all issues raised by appellants and give a decision on each.
Appellants introduced considerable testimony and evidence on the motion before the trial judge at the October 1980 term of Circuit Court in Holmes County. [The trial of the cause before the jury was had at the April 1981 term.] The first witness called on the motion to quash was appellant Eddie James Carthan. He testified regarding the called special meeting on the night of April 30, 1980. In discussing the closed session during which the matter of appointing an acting police chief was taken up, Carthan testified that a motion was made by Alderman Hayes to hire Jim Andrews as town marshal. Carthan, according to his testimony, ruled the motion out of order because, "we were not ready to entertain a motion until it had been discussed and other board members had time to consider the motion." According to Carthan the meeting then "was dispersed." He testified that James Harris was acting chief of police for one or two days before he appointed Johnny Dale, one of the appellants, acting chief of police on April 29. On April 29 Carthan had written a letter to this effect.
Carthan testified that after the conclusion of the Board of Aldermen meeting, he met with the police officers, including Harris, all of whom were at the town hall. Carthan told them that the police department would continue as it was until further action by the board. Carthan then went to his place of business and sometime later appellant Dale came and told him that Andrews had come to the town hall and the police department had advised him that a majority of the board had told him to assume immediately the duties of acting chief of police. Carthan then related about calling *169 the appellants, all but two of whom he classified as auxiliary policemen to become armed and come at once. He testified that the auxiliary policemen "were not on duty 24 hours a day like a normal policemen." He stated that he called the sheriff's office but could get no active response, so "I immediately handled the situation myself." The situation, according to Carthan, was that "we had a person come in off the street taking over the town and police department who had not been hired or anything."
Carthan then related the sequences of events that occurred at the town hall and police department. He testified he led the other seven armed persons into the town hall where he asked Andrews to leave, Andrews refused, and resisted arrest by pulling a gun. He testified that it seemed a "tussle" began and Andrews got injured in the tussle. Andrews, according to Carthan, pulled the gun and pointed it at Carthan and the others. All of these men had in their hands either pistols, shotguns or rifles.
The next witness offered by appellants on the motion to quash was C.W. Johnson, now deceased. The effect of his testimony was to deny that he was in the original group led by the mayor to the town hall, but happened to be passing by at the time. He heard a gunshot and went into the town hall to see what happened. He saw Jim Andrews lying on the floor. He then left the town hall and knew nothing further about the incidents that were occurring.
The next witness offered on the motion to quash was Justice Court Judge Shirley Neal. His authority was in District Four of the County, which district did not include the Town of Tchula. He testified that Mayor Carthan called him and asked him to agree to handle the case growing out of the charges he was making against Andrews. Judge Neal had a hearing at a later time in May. He did not know the exact date. He had been a justice court judge six months. He testified that he heard testimony from appellant Dale. In addition to Dale, Mayor Carthan was the only other person present and he "conducted" the hearing. He testified he was acting for the Town of Tchula at the time of the hearing. He held that Andrews should be bound over to await the action of the next Holmes County Grand Jury.
The next witness called on the motion to quash was Jewell McPhail, who was presently serving as town clerk for Tchula. She had been clerk for ten years from 1968 to 1978. She was rehired in September 1979 and has served continuously since that time. She testified regarding the call of the special April 30 meeting by two of the aldermen. This procedure was properly handled. She further testified that at the special meeting the mayor ruled the meeting and every motion out of order. She testified regarding the motion to hire Andrews as police chief, that his service beginning immediately was approved by a majority vote of the aldermen. Those voting for such action were Hayes, Granderson and Gibson. She stated positively that "three of the aldermen voted ..." These three later signed the minutes of the meeting; the remaining two aldermen and the mayor did not sign them. She further testified that none of the then acting policemen, other than James Harris, were ever hired by the Board. She further testified that prior to the breaking up of the meeting, appellant Carthan said at least twice that "Mr. Andrews had better not show up on the street with a gun."
The next witness called by appellants on the motion to quash was Jim Andrews. He testified "I was appointed as acting chief of police by the majority of the board of aldermen and I went to city hall and took over the office. I relieved one officer who was there, who was never hired and paid by the Town of Tchula." He was referring to appellant Dale. He testified that he was town marshal of the Town of Tchula for a term of ten years from 1968 to 1978. He stated that after the special board meeting, he was called and told to come to a place of business where one of the aldermen worked; at that place when he arrived were the three aldermen  Hayes, Granderson, and Gibson. They told him that a *170 majority of the board had elected him chief of police and requested that he immediately assume that position. He went home, put on his uniform that he previously had used; armed himself and went to the town hall. He talked with appellant Dale and told him the situation. He stated that as Dale left the town hall peacefully, he heard Dale say something about "him not hearing the last of this." He testified that James Harris, the full-time policeman was at town hall and was requested by Andrews to work the 11 to 7 shift that night. Harris agreed and went home to secure his equipment. Andrews then heard of the mayor and the other appellants coming and sent night watchman J.T. Rhyne to the home of Harris to bring him back immediately. This was done. Andrews then testified that the mayor and his men all came through the unlocked door of the town hall with weapons in their hands. Andrews, according to him, requested that the mayor sit down and discuss the entire matter, but that the mayor did not do so. Andrews then stated that Carthan and three or four others jumped on him. They were struggling when a shot was fired. This struck Andrews on the side of the head, causing him to become unconscious and fall to the floor. When he regained consciousness, he was in a puddle of blood. He testified that where he was shot there still was a scar. He had been carried to the hospital in Lexington, shortly after the incident ended. There the wound was sutured and he was released and placed under arrest by Mayor Carthan.
The next day Andrews filed affidavits against Carthan charging him with assault. A hearing was had in the county court room in Lexington before Justice Court Judge Dean Taylor, who was the sister-in-law of Andrews. The defendant was then bound over to await any action of the next county grand jury. At the hearing, Andrews further testified that James Harris had returned to the town hall and the police head-quarters. When it was known that the appellants were coming, Harris went to the back room where the radio and telephone were kept and attempted to call the county sheriff. He had turned the lights off in the room, but could still see the lighted telephone numbers. He was attempting to reach the sheriff when appellants came into the main town hall room.
The next witness called by appellants on the motion to quash was James Harris. He testified he had been a town policeman for four years. He stated he was in the back room when he saw the appellants come into the town hall, and they all aimed at Mr. Andrews with their guns. He was not questioned about the remaining part of the incidents that thereafter occurred.
The last witness called by appellants on their motion to quash was Mrs. Dean Taylor. She testified she was Justice Court Judge in District 5 which included the Town of Tchula, and she was serving as municipal judge for the town. She testified that Andrews and Harris filed charges against appellants after the incidents hereinbefore related occurred. After a hearing, appellants were bound over until the next convening of the county grand jury. The witness testified that prior to her hearing, she asked the justice court judges in Districts 2 and 3 to hear the cause, but was unable to get them to do so.
The first and foremost contention in appellants' motion to quash was that Mayor Carthan is charged by statute with superintending control of all officers and affairs of the municipality and was, at the time of the incidents hereinbefore set out, acting in his capacity as mayor. From the foregoing discussion of a portion of the testimony on the motion, and assuming it to be true, as the trial court was, and this Court is required to do, there can be no question but that it was a question of fact as to whether or not Carthan and his assembled policemen and auxiliary policemen exceeded any authority he had as mayor, or whether or not his action was taken in a reckless, improper and criminal manner. Certainly the testimony related above was sufficient to withstand attack on the charges set out in the indictment.
Next, the other appellants contend that they were acting in official capacities *171 and under the immediate charge and direction of Mayor Carthan. It sufficies to say that assuming the mayor led them astray and gave them illegal orders, and if they followed the mayor when any unlawful or illegal actions were carried out, they would be just as much guilty as the mayor. Anderson v. State, 397 So.2d 81 (Miss. 1981); Bass v. State, 231 So.2d 495 (Miss. 1970); McBroom v. State, 217 Miss. 338, 64 So.2d 144 (1953); Hardy v. State, 180 Miss. 336, 177 So. 911 (1938); Kittrell v. State, 89 Miss. 666, 42 So. 609 (1907); and McCoy v. State, 91 Miss. 257, 44 So. 814 (1907). The testimony as to these appellants clearly withstands an attack on the indictment.
The motion contends that the state arbitrarily chose to prosecute the alleged assault on policeman James Harris. There was absolutely no proof that the state made a selective prosecution. The prosecution has the right to exercise a conscious degree of selectivity in prosecuting individuals for similar conduct. Only in rare cases may a selection of prosecution establish a prima facie case of discrimination or selective prosecution. U.S. v. Diggs, 613 F.2d 988 (D.C. Cir., 1979).
Appellants cite no authority to substantiate their contention on the above ground.
Appellants' contention that the motion to quash should be sustained for the reason that the justice court judge for the district including the Town of Tchula, after being unable to get another justice court judge to hear the matter, in effect passing the entire matter over to the next county grand jury call, was sufficient to attack the allegations of the indictment. Again, no authority is cited for this contention. Furthermore, the court may take judicial knowledge that the presentation of evidence before a regularly convened grand jury is an entirely new proceeding and has nothing whatever to do with a preliminary hearing had before a justice court judge, not required to have legal training. The indictment charges against appellants were made solely by the grand jury and there is absolutely no charge that there was any irregularity in those proceedings.
In their brief, appellants, for the first time, state that the due process rights of appellants under the Fifth and Fourteenth Amendments of the United States Constitution were violated. In the first place, no authority whatever is cited for this contention. Furthermore, a constitutional question was not raised in the lower court or in the assignments of error to this Court. Pursuant to the requirements of Mississippi Supreme Court Rule 6(b), we cannot consider such arguments here that were not presented to the lower court, or were not preserved in the lower court and were not advanced on appeal to this Court. Additionally, even assuming that the due process question is before this Court, no authority is needed to make a definite conclusion that the charges in the indictment and the hereinabove related evidence on the motion to quash, did not result in a denial of the due process rights of appellants. We find that there is no merit in the motion to quash.

APPELLANTS' MOTION FOR A DIRECTED VERDICT AND PEREMPTORY INSTRUCTION OF ACQUITTAL:
As hereinbefore set out, the trial of the cause was had at the April 1981 term of Circuit Court in Holmes County, several months after the evidentiary hearing on the motion to quash the indictment. The evidence at the trial was not as lengthy as the evidence on the motion. Also, some witnesses were not called and some that did not testify on the motion were called. In considering the appeal from this point on, we consider only the proceedings at the jury trial and post-trial proceedings. For what it is worth, it is noted that a different trial judge presided at the jury trial from the one who heard the evidence on the motion to quash the indictment.
The first witness called by the state after selection of the jury was City Clerk Jewell McPhail. She testified that altogether she had been city clerk for about twelve years and was so acting on April 30, 1980. She *172 introduced the minutes that were typed subsequent to the special meeting of the mayor and board of aldermen. These minutes showed that all six officials were present. Regarding the appointment of a chief of police, this action was taken after the mayor and board went into executive session. There was a motion by Alderman Hayes to hire Jim Andrews as police chief, with his service to begin at once. There was a second by Alderman Granderson and a third by Alderman Gibson. The minutes were signed by these three aldermen. McPhail testified that the majority of the board voted to hire a police chief at the special meeting and a salary of $700 per month set. This was reflected in the minutes. McPhail testified that three aldermen voted "yes" and two voted "no." The ones who voted "yes" were the three set out above. The two voting "no" were Jesse Banks and one of the appellants, David McLaurin.
McPhail testified that afterwards, appellant Carthan twice made a statement that "Mr. Andrews better not be caught on the streets of Tchula with a gun."
McPhail further testified that it would have been impossible for Andrews to have secured a bond that night and that no oath was administered to him in her presence.
In regard to the failure of the mayor's name to be signed to the minutes, McPhail testified that he had signed hardly any of the minutes since she had been back to work as of September 1979. On cross examination as to why the "nay" votes were not typed on the minutes and notation that the motion was carried, McPhail stated that she did not know why this did not appear, but that the vote on the motion occurred.
Witness Nathaniel McCoy testified that on the night of April 30, 1980, he passed by in his car Mayor Carthan's place of business and saw the mayor and the group out in front talking. He drove on down to town hall and told Andrews and Harris about the men gathering. He then got back in his car and had not left when the appellants came down and "broke in, just push into city hall." He testified the men had guns, pistols and rifles. The witness heard a gunshot, but he did not go inside city hall. He stated that Mayor Carthan was in front of the group. They "all just tried to go in there at one time."
Witness Morris Davenport testified that on the night in question he was in the city hall waiting on a bus to go to Jackson to visit his sick wife. He saw the men coming in the door with guns, so he reached and got his suitcase and went out of the building. He testified he was scared.
The state next called witness Jim Andrews. Prior to Andrews taking the stand, the attorney for appellants, out of the presence of the jury, and in the court's chambers made the following motion. "Your Honor, we would like to move at this time that the witness Mr. Jim Andrews, which is the affiant under another charge which we are not trying here today, we would like to have a motion limiting his testimony to the facts and circumstances surrounding the allegations against James Harris. The potential for prejudice in this matter is so great that we felt compelled to make this motion outside the hearing of the jury." The court sustained this motion and instructed the attorneys to instruct witness Andrews to relate only what occurred in regard to James Harris. Andrews testified that at about 9 p.m. he was requested to come to where the three aldermen were who voted to make him police chief, and that he went there and discussed with them his appointment. All three of the aldermen were present. He was informed that he was police chief as of the adjournment of the special meeting.
Andrews testified that he had been chief of police for ten years, from 1968 to 1978; and he still had his uniform and service revolver. He put on his uniform, armed himself and went to town hall. He testified that he informed Dale about the situation and that Dale left the city hall stating, "you haven't heard the last of this," or something similar.
Andrews then sent J.T. Rhyne, town night watchman, to find Officer James Harris to see if he would come and take the *173 11 to 7 shift. Harris came between 11:30 and 12 p.m.
Andrews further testified that the mayor, leading the other appellants, "bursted" in the front door with rifles, shotguns and pistols and took over the three, that is, Andrews, Harris and Rhyne. Andrews testified that Harris was in the small back room trying to call the sheriff for assistance; that the mayor got him out of the room and pointed a pistol at Harris' head and "that is all I remember."
Andrews testified that he did not have an opportunity to secure a bond or take an oath on the night of the 30th, but he took his oath the next day by signing a form that was already filled in at the town hall.
Andrews testified that James Harris was on duty at the time the incidents occurred. At the time he was in the radio and telephone room, where an officer was required to be, and was engaged in trying to locate the sheriff. Harris had been a police officer continuously for four or five years. Andrews further testified he considered himself the duly authorized city police chief because of the directions of the majority of the board of aldermen following the special meeting.
James Harris testified that he had been a police officer for the Town of Tchula over four years continuously. He testified that after Andrews was told by the three aldermen of his new job, he went home to get his equipment and his uniform. He had not completed these actions when Officer Rhyne knocked on the door and told him to come quickly that there was going to be trouble and he was needed. Harris stated about midnight he was in the small back room as he had come on duty at 11 p.m. He related about the mayor and the group coming in with shotguns, pistols and rifles while he was in the back room. The group had their weapons in their hands when they came in. He stated Andrews requested that the mayor sit down and talk the matter over. Thereafter appellant Callahan put his gun in the back room and ordered whoever was in there to come out with their hands up. Harris stated he put his hands up and started walking out the door. Just as he stepped out the door, he saw the mayor aim his pistol at his head. He thought he would be "dead in a minute" and was afraid. He stated that the mayor pulled him around and that at that time he was struck twice, once on the shoulder and once on the arm. He stated he did not attempt to pull his gun, but that during one of the times he was struck his gun fell from its holster to the floor. Harris did not know which of the group struck him, as he had been pulled around.
On cross examination Harris testified that he understood Andrews to have been made chief of police because the three members of the Board of Aldermen told him so. Harris testified positively that he was working on the night of April 30 and that he was on duty at the time the incident occurred.
The state rested its case.
The first witness called by the appellants was Johnny B. Dale, one of the appellants. He testified that at no time during the night of April 30 did he hit, point a gun at, or otherwise assault James Harris. On cross examination, an instrument was shown Dale purported to be from the mayor dated April 29, 1980, appointing Dale acting police chief. He stated a couple of days before the incidents, he was so informed by the mayor. Dale testified that when the group went to the town hall, "we went inside city hall and the mayor started talking with Mr. Andrews. He told Mr. Andrews he had not been elected chief of police or was not a police officer and to go home and let the board settle it. It wasn't up to the police officers, let the board settle it. So we left."
Dale denied that there was an altercation or a scuffle or some sort of involvement between the people who were present, except "One." He testified he was present when Harris came out of the back room. He did not know whether he had his hands up or not. He did not see the mayor or Harris, as at that minute his attention was focused on Mr. Andrews.
*174 The final witness introduced by appellants was Eddie James Carthan, one of the appellants. He testified he was elected mayor of the Town of Tchula in June 1977. He recalled the special called meeting of the board of aldermen. The items listed on the special call were concerning a mayor protem and hiring a chief of police. No official action was taken on these items. He testified that any three of the aldermen could sign the minutes. He stated that the meeting was not adjourned, but that they had dispersed. He advised Dale that he would remain acting chief of police until the board met and resolved the issue. He related calling the auxiliary policemen and stated that when they went to the city hall he was talking to Andrews when he "pulled a gun on me." He stated further "after the commotion had ended, there was some noise in the back and someone said `it's someone in the back' and he was asked to come out of the back." Harris came out of the back, according to Carthan, and when asked to give the mayor his equipment, he did so and went home. Carthan denied pointing a gun at Harris or hitting him. "This is the first time I had knowledge of him being assaulted." He stated that Harris was not on duty at the time. On cross examination Carthan again related his action in getting the armed group together. Upon being questioned about confusion and disagreements at the board meeting that night and at other meetings, he said, "We always have had disagreements."
Carthan testified that the meeting was called for the purpose of hiring someone to serve as chief of police but "they did not hire anyone," and that "we did not even make it to that subject." Carthan admitted on cross examination that Harris would have the right to perform duties other than whatever the schedule called for.

WAS THE COURT IN ERROR BY DENYING APPELLANTS' REQUEST FOR A DIRECTED VERDICT AND PEREMPTORY INSTRUCTION?
It is elemental that the responsibility for determining disputed questions of fact rests with the jury. This principle has been stated by this and other courts in cases too numerous to cite. A few are: Cutrer v. State, 410 So.2d 1308 (Miss. 1982); Davis v. State, 320 So.2d 789 (Miss. 1975); Ainsworth v. State, 304 So.2d 656 (Miss. 1974); McLelland v. State, 204 So.2d 158 (Miss. 1967); and Cobb v. State, 235 Miss. 57, 108 So.2d 719 (1959).
Another elemental principle is that this Court in reviewing whether or not the jury had sufficient evidence to make its finding of fact is required to examine the facts most favorable to the party against whom the motion for directed verdict or peremptory instruction is requested, in this case the state. Bullock v. State, 391 So.2d 601 (Miss. 1980); Wright v. State, 387 So.2d 735 (Miss. 1980); and Saik v. State, 387 So.2d 751 (Miss. 1980). See also Jackson v. Virginia 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Regardless of the above set out principle, we carefully have studied every word of the trial record and state without reservation that the evidence clearly made a case for the jury to decide.
Appellants claim that they were entitled to the peremptory instruction because the state failed to prove that Harris was a police officer acting within the scope of his duty and that the acts of appellants were done with proper public authority and therefore were justifiable. From the above discussion of evidence, it is undisputed that James Harris had been a full-time police officer for the Town of Tchula for more than four years. The only question was whether or not he was on duty at the time of the incidents revealed in the record. There was a conflict on this question. Harris stated positively that he was on duty. This was confirmed by Andrews whose position was questionable, to say the least, at that time. Harris' position was entirely different from that of Andrews. Whether or not Harris was acting within the scope of his office as a full-time policeman depends on whether or not he was performing a legal duty associated with his office as distinguished from engaging in a personal *175 frolic of his own. United States v. Martinez, 465 F.2d 79 (2d Cir.1972); United States v. Cho Po Sun, 409 F.2d 489 (2d Cir.1969); cert den., 396 U.S. 864, 90 S.Ct. 140, 24 L.Ed.2d 118. See also Watkins v. State, 350 So.2d 1384 (Miss. 1977); and Gardner v. State, 368 So.2d 245 (Miss. 1979).
Harris' position did not depend upon the "legal" status of Andrews. Conceding that the exact legal position of Andrews was questionable, the position of Harris clearly was dictated by the orders of a majority of the Board of Aldermen. Even though Carthan denied that the subject of electing a police chief was discussed at this special meeting, the testimony of the City Clerk McPhail and the minutes reveal otherwise. All of this made a question for the jury to decide as to the status of Andrews and without a doubt it was, to say the least, a question for the jury as to the status of Harris.
Appellant Carthan contends that he as mayor had authority under the applicable statutes to do what he did on the night in question. Admittedly, in addition to giving the mayor a vote in case of a tie, he had the superintending control of all the officers and affairs of the municipality and had the duty to take care that the laws and ordinances are executed. Code § 21-3-15 (1972). The question here is whether or not it was a jury question as to Mayor Carthan, along with the other appellants, exceeding that authority. We find that there clearly was such a jury question. We are without any power to overturn that finding of fact by the jury. It certainly cannot be argued that the jury had to accept as law that the mayor was exercising his statutory power properly when he got together a group of armed men and led them into the city hall with guns in their hands and the incidents occurred as hereinbefore related. The jury had the right to disbelieve the mayor when he testified that Andrews pulled his gun at a time when seven or eight guns admittedly were pointed in Andrews' direction. It was a question for the jury as to whether or not the mayor led his group into exceeding the statutory authority.
Appellants' Assignments of Error Numbers 3 and 8 involve the same situation. After the jury returned its verdict, a member of the clerk's office found twelve slips of paper in the jury room. Eleven of these had the words "guilty of simple assault" written on them and the twelfth had "guilty of simple assault on a police officer" written on it. The jury received complete instructions from the court that if they did not find appellants guilty of aggravated assault on a police officer they could find them guilty of simple assault on a police officer acting in the line of duty. The jury on instructions from the court returned seven separate verdicts as follows: "We the jury find the defendant ____ guilty of simple assault on a law enforcement officer." [The name of each of the appellants was inserted where the blank appears above.] The jury was polled and each stated it was his or her verdict. The jury clearly followed the instructions of the court. The jurors found from the evidence that none of the appellants were guilty of the charge for which they were indicted and which carried a heavier penalty but found them guilty of a lesser charge of simple assault. We find no error in these assignments of error by appellants.
Appellants contend that the court erred in granting Instruction Nos. 2 and 4 for the state. We have carefully examined these instructions and find them to be proper. Instruction No. 2 authorized the jury to find the lesser offense than that charged in the indictment as we have above discussed. Instruction No. 3 advised the jury that when two or more people act in concert committing a crime, then all who participate in the common plan are equally responsible. The law is clear that persons committing crime in concert may be found equally guilty by the jury. Anderson v. State, supra; Bass v. State, supra; McBroom v. State, supra; Hardy v. State, supra; Kittrell v. State, supra; and McCoy v. State, supra.
Appellants complain of the court refusing Instructions 2, 3, 6, 7, 8, 9 and 10. At the outset, the record reveals that Instruction *176 No. 7 was withdrawn by appellants. Instruction 10 was the request for peremptory instruction which we have already discussed.
The remaining instructions requested by appellants and refused by the trial court are as follows:
Instruction No. 2
The Court instructs the jury that at all times relevant hereto Eddie J. Carthan was the duly elected Mayor of the Town of Tchula, and as Mayor, he has superintending control of all officers and affairs of the Town of Tchula and is charged by law to take care that the laws and ordinances are properly executed.
Instruction No. 3
The Court instructs you that the Mayor has the duty to be active and vigilant in enforcing all laws and ordinances for the government of the Town of Tchula and to cause all other officers to be dealt with promptly for any neglect or violation of duty.
Instruction No. 6
The Court instructs you that before Jim Andrews could lawfully perform any act as Chief of Police or Town Marshall he must first take the oath of office and have executed and filed with the Clerk of the Town, and subject to the approval of the Mayor and Clerk, a good and sufficient bond in an amount not less than ONE THOUSAND DOLLARS ($1,000.00), nor more than TEN THOUSAND DOLLARS ($10,000.00), the exact amount having been fixed by the Board of Aldermen, which bond is conditioned upon the faithful performance of the duties of his office.
Instruction No. 8
The Court instructs you that Eddie J. Carthan, as Mayor of the Town of Tchula, is given the lawful power to veto, in writing, giving his reasons therefor, any measure passed by the Board of Aldermen. Any measure so vetoed may be adopted notwithstanding; if two-thirds of the Aldermen vote therefor.
Instruction No. 9
The Court instructs you that two-thirds of the five member Board of Aldermen of the Town of Tchula is four (4) votes.
The above set out instructions, the refusal of which is complained of by appellants as being erroneously refused, clearly were erroneous. They all were abstract statements of law, mostly the quoting of statutes describing the duties of municipal officials, principally the mayor. We have held in many cases that abstract instructions such as the ones complained of here should not have been given. Harkins v. Paschall, 348 So.2d 1019 (Miss. 1977); Freeze v. Taylor, 257 So.2d 509 (Miss. 1972); New Orleans J. & G.N.R. Co. v. Statham, 42 Miss. 607 (1869); 53 Am. Jur., Trial § 573, p. 451 (1945); 38 Am. Jur., Negligence § 370, p. 1089 (1941). The trial judge granted defendants' Instruction No. D-4 which was not in the abstract and included the matters sought to be placed before the jury in the refused instructions. D-4 reads as follows:
The court instructs the jury that if you find from the evidence that the Mayor, Eddie J. Carthan believed a breach of the peace was taking place in the Town of Tchula on April 30, 1980, and because of his belief, the Mayor exercised his lawfully (sic) authority to call on the policemen and other citizen (sic) to aid in enforcing the laws and that the acts, if any, of Eddie James Carthan, John Dale, Samuel Callahan, David McLaurin, Tom Common, R. James Matthews, and Garrett Johnson toward James Harris were justified and necessary in discharging the legal duty of the Mayor or in lawfully keeping and preserving the peace, then you shall find the defendants "not guilty."
In addition to refusing Instruction No. 6 as being in the abstract and not related to other facts necessary for consideration by the jury, the instruction relates only to the controversy as to whether or not Jim Andrews had fully qualified as chief of police *177 on the night in question. As we have seen, this case does not involve an alleged attack on Andrews and is not determined by whether or not he was fully qualified by not performing the acts set out in the instruction. The indictment and the trial were for an alleged attack on an admittedly full-time policeman, James Harris. The question for the jury to have considered was whether or not Harris, admittedly on twenty-four-hour service, was acting in the furtherance of that service and his duty at the time of the alleged assault. The jury was fully instructed on this question.
Appellants complain of the Court instructing the jury that they could bring back a verdict of a lesser included offense from that charged in the indictment. The trial judge gave the jury a separate instruction on each defendant and each instruction clearly and plainly advised as to the four alternatives that could be found by the jury: namely, (1) guilty as charged, (2) guilty of aggravated assault, (3) guilty of simple assault on a police officer, or (4) not guilty. In the first place there was no objection in the record to these instructions and this assignment of error should not be considered here. We, however, considered the assignment and find no error. The law is clear that on indictment for any offense the jury may find the defendant guilty of the offense as charged or any attempt to commit the same offense or may find him guilty of an inferior offense. Code, § 99-19-5 (1972). This Court has held that simple assault is a constituent offense of assault to kill and murder. Howard v. State, 212 Miss. 722, 55 So.2d 436 (1951); Blakely v. State, 165 Miss. 503, 144 So. 864 (1932); Bedell v. State, 50 Miss. 492 (1874).
It certainly cannot be said that simple assault is not a constituent offense of aggravated assault.
We already have discussed Assignment of Error No. 7. It is that the verdict of the jury is against the overwhelming weight of the evidence. As stated at the outset, we are an appellate court whose obligation and duty is to review questions of law which include the decision as to whether or not a jury had sufficient facts to make its finding. As hereinbefore emphatically pointed out, we can reach no conclusion other than this cause was purely and simply a jury question. The jury saw fit to find the appellants not guilty of the crime for which they were indicted, but guilty of the lesser offense under which each was sentenced. The imprisonment sentences for six of the appellants were suspended. The imprisonment sentence for the seventh was much less than the maximum authorized by statute.
After a careful study of the record and briefs in this cause and hearing the oral argument, we find that there is no reversible error shown. The cause is therefore affirmed as to all appellants.
AFFIRMED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and BROOM, ROY NOBLE LEE, HAWKINS, DAN M. LEE and PRATHER, JJ., concur.