431 So.2d 1111 (1983)
John Edward COLBURN
v.
STATE of Mississippi.
No. 54206.
Supreme Court of Mississippi.
May 4, 1983.
Rehearing Denied May 25, 1983.
*1112 David O. Butts, Tupelo, for appellant.
Bill Allain, Atty. Gen. by Marvin L. White, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, HAWKINS and DAN M. LEE, JJ.
DAN M. LEE, Justice, for the Court:
This is an appeal from the Circuit Court of Monroe County wherein John Edward Colburn, appellant, was indicted, tried and convicted for the July 8, 1981, aggravated assault upon Mabel Colburn, his former wife. Upon conviction, Colburn was sentenced to serve a term of fifteen years in the custody of the Mississippi Department of Corrections. We affirm.
Mabel Colburn and appellant were married in 1955, divorced in 1963, remarried in 1969 and divorced again in January of 1974. They have four children. Mabel and appellant also lived together from October of 1980 until May of 1981. After this separation, Mabel moved to an apartment on Hatley Road in Amory where the alleged offense is said to have occurred.
On July 8, 1981, appellant stopped by Mabel's house between 8:30 and 9:00 p.m. and asked her to ride to Nettleton to purchase some beer. Mabel refused to go to Nettleton, but convinced appellant to accompany her to their previous apartment where a deep freezer had remained since Mabel and appellant had vacated those premises.
Appellant had been drinking. While returning to Mabel's house with the freezer, an argument erupted which was predicated on Mabel's socializing with other men. Appellant left Mabel's house before 10:00 p.m.
After leaving Mabel's residence, appellant stopped by Charles Tartt's home and inquired of Tartt if he had a gun he (appellant) could borrow. Tartt, appellant's son-in-law, told appellant he had a gun at his apartment, whereupon the two men left to retrieve the same. While enroute to Tartt's apartment, appellant said he was going to kill Mabel. Upon hearing this, Tartt turned his vehicle around and headed home. On their way back to Tartt's house, appellant exited the vehicle within a block of Mabel's residence.
At approximately 10:30 or 11:00 p.m. Mabel heard a knock at her front door. Both Mabel and her daughter, Donna, went to the front door but saw no one. They checked the back door also but to no avail. *1113 While in the rear portion of the apartment, a second knock was heard. At this point appellant appeared at the front door and pleaded with Mabel to let him in. Mabel refused, telling appellant to come back the next day. After Mabel locked the door, appellant broke through the door, grabbed Mabel by the hair and then dragged her onto the front porch. Appellant then stated he was going to cut her head off and throw it in a ditch. Appellant then proceeded to cut Mabel with a pocket knife on the hand, arm, shoulder, neck and head.
Meanwhile, Donna had run into the bedroom and retrieved a small-caliber pistol. She attempted to shoot appellant as he stabbed Mabel. However, the gun would not discharge and ultimately jammed. Donna told appellant she would kill him if he did not leave Mabel alone. Appellant replied she had better kill him because if she did not, he would get her next. Donna then struck appellant with the pistol and ran. At this moment Mabel was able to break free and run until she fell. When she looked up, appellant was standing over her and stated he was going to finish her off. Some passersby and Donna found Mabel before appellant resumed his attack.
Mabel was taken to the hospital where she remained for six days. It took approximately two and one-half hours to surgically repair and sew up the lacerations from her knife wounds. She received two blood transfusions and could not be put to sleep due to the extensive amount of blood she had lost.
Appellant's version of the incident was somewhat different. Appellant asserted he left Mabel's house at approximately 8:00 p.m. after returning with the deep freezer which remained on the truck. With Mabel's permission, appellant was to return later to unload the freezer. Appellant then went to Tartt's house and the two rode to get a six pack of beer. Tartt dropped appellant off in front of Mabel's house around 9:00 or 10:00 p.m.
As he walked up to Mabel's house, someone fired two shots at appellant from a metal building which caused him to run through Mabel's front door. Someone then hollered, "shoot him," whereupon appellant turned and tried to run back outside. It was at this point, according to appellant, that Mabel got cut. Appellant flagged a policeman down and told him what had happened. Officer Stevenson, who investigated the incident and arrested appellant, denied appellant ever mentioned anything about being shot at.
The jury returned a verdict of guilty as charged. A sentence of fifteen years was imposed by the trial court.

I. Is Mississippi Code Annotated section 97-3-7(2) (Supp. 1982) unconstitutionally vague?
Mississippi Code Annotated section 97-3-7(2) (Supp. 1982) provides as follows:
(2) A person is guilty of aggravated assault if he (a) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; or (b) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; and, upon conviction, he shall be punished by imprisonment in the county jail for not more than one (1) year or in the penitentiary for not more than twenty (20) years. Provided, however, a person convicted of aggravated assault upon a law enforcement officer or fireman while such law enforcement officer or fireman is acting within the scope of his duty and office shall be punished by a fine of not more than five thousand dollars ($5,000.00) or by imprisonment for not more than thirty (30) years, or both.
Appellant contends that the statute is unconstitutionally vague because it fails to delineate a guide a jury could follow as to what constitutes serious bodily injury and what circumstances manifest an extreme indifference to the value of human life.
The constitutionality of section 97-3-7(2) was never raised in the trial court. Appellant filed no demurrer, motion to quash, or *1114 objection, nor was mention made in his motion for a new trial as to the constitutionality of section 97-3-7(2). This Court has continuously adhered to the rule that questions will not be decided upon appeal which were not presented to the trial court and that court given an opportunity to rule on them. Stringer v. State, 279 So.2d 156 (Miss. 1973). Only matters of jurisdiction may be raised for the first time on appeal. Williamson v. State, 330 So.2d 272 (Miss. 1976).
Appellant, by failing to attack the constitutionality of section 97-3-7(2) by proper motion waived any error in this regard and cannot now seek reversal on this ground in this Court.

II. Did the trial court err in granting instruction S-1?
Appellant contends instruction S-1 was erroneous because it instructed the jury that the pocket knife used in cutting Mabel Colburn was a deadly weapon when such was a question of fact to be determined by the jury.
An examination of the record reveals that appellant failed to object to instruction S-1 on any grounds. Because appellant failed to object to this instruction at trial, such has not been properly preserved for appellate review. Valentine v. State, 415 So.2d 687 (Miss. 1982).

III. Did the trial court err in refusing to instruct the jury on simple assault?
Appellant contends that he should have been given an instruction on the lesser-included offense of simple assault. While he did not deny that he assaulted Mabel Colburn, he contended he was acting in self-defense after being fired upon while approaching Mrs. Colburn's residence. Appellant did not, however, assert that these alleged shots were fired from Mrs. Colburn's house.
The only proof as to the extent of the injuries Mrs. Colburn received in the affray came from Dr. Cole who testified as follows:
Q. Dr. Cole, in your professional opinion, would you consider these wounds to be serious bodily wounds?
A. Yes, I would.
* * * * * *
Q. Could wounds such as these be inflicted without causing great danger to the victim?
A. I don't see how anybody could make a movement with a knife in this area without a very great risk to the patient.
Q. And was there or could there have been great risk of death to this lady?
A. Yes.
Q. Sir?
A. Yes, sir.
Dr. Cole was not cross-examined nor was any other proof presented as to the nature and seriousness of the wounds suffered by Mrs. Colburn.
An instruction on a lesser-included offense should only be given after the trial court has carefully considered the evidence and is of the opinion that such an instruction is justified by the evidence. In Re Jordan, 390 So.2d 584 (Miss. 1980). Here, there was no evidence to the contrary that the wounds inflicted upon Mabel Colburn were anything other than serious with great risk of death. Based upon this record, we cannot say the trial court erred in refusing appellant's proffered instruction on simple assault.
Based on the foregoing, appellant's conviction and sentence are hereby affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.