577 So.2d 840 (1991)
Baxter Trent BARNES
v.
STATE of Mississippi.
No. 89-KA-0552.
Supreme Court of Mississippi.
March 6, 1991.
Vaughn Davis, Jr., Davis & Rogers, P.A., Jackson, for appellant.
Mike C. Moore, Atty. Gen., John R. Henry, Jr., Sp. Asst. Atty. Gen., Jackson, for appellee.
En Banc.
PRATHER, Justice, for the Court:

ON PETITION FOR REHEARING
The opinion formally released December 12, 1990, is modified to read as follows:

I. INTRODUCTION
In this case, Baxter T. Barnes contends that he was denied his rights to a speedy trial and effective assistance of counsel. This Court agrees and concludes that reversal is warranted.
Unless otherwise indicated, the facts are undisputed. On August 11, 1987, a Hinds County Grand Jury returned an indictment against Baxter T. Barnes  charging him with possession of a controlled substance (less than an ounce of marijuana) with intent to distribute. On August 26, 1987, Barnes waived arraignment and entered a plea of "not guilty." Barnes was initially scheduled to be tried on January 6, 1988. However, continuances were granted: (1) on December 28, 1987  which continued trial from January 6, 1988, to February 11, 1988; (2) on July 18, 1988  which continued trial from July 19, 1988, to September 14, 1988; (3) on January 23, 1989  which continued trial from January 23, 1989, to February 1, 1989; and (4) on February 1, 1989  which continued trial to March 23, 1989. The State received the first continuance, and Barnes received the rest.
Judge William Coleman held trial on March 23, 1989. A jury found Barnes guilty  upon which he received a suspended sentence of three years' imprisonment, placed on three years' probation, fined $1,000, required to complete forty hours' community service, and ordered to pay court costs, taxes, and assessments.
On appeal, Barnes presented two issues which are addressed in the following section.

II. ANALYSIS

A. Whether Barnes Was Denied a Speedy Trial?
Whether Barnes was denied a speedy trial actually is not a matter of dispute. Both Barnes and the State agree that, in *841 the very least, 423 days transpired before Barnes was finally brought to trial on March 23, 1989. See Appellant's Brief at 3; Appellee's Brief at 5.
This Court's computation of time reveals that 576 days transpired from the date of arraignment to the date of the trial. Of the 576 days, continuances involved 158 days. Thus, the total number of days which transpired from arraignment to trial  not including the time of continuances  is 418 days (i.e., 576 days - 158 days = 418 days). This means the prosecution missed the statutory deadline for a speedy trial by 148 days (i.e., 418 days - 270 days = 148 days). See MISS. CODE ANN. § 99-17-1 (Supp. 1990) ("Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than ... (270) days after the accused has been arraigned."). Accordingly, the State concedes that "it would appear that § 99-17-1 was violated." Appellee's Brief at 5.
While conceding that "it would appear that [the speedy-trial statute] was violated," the State contends that Barnes should be procedurally barred from raising the speedy-trial issue on appeal since he failed to raise the issue at the trial level. Appellee's Brief at 5-6 (citing Colburn v. State, 431 So.2d 1111 (Miss. 1983); Callahan v. State, 419 So.2d 165 (Miss. 1982)). In Colburn, this Court held that, because the appellant failed to question the constitutionality of a statute at the trial level, he could not raise the question on appeal. 431 So.2d at 1113. And in Callahan, this Court held that, because a "constitutional question was not raised in the lower court or in the assignments of error" on appeal, the question may not be addressed. 419 So.2d at 171.
Barnes counters that the State's contention should be rejected because: (1) the State's only authoritative support  Colburn and Callahan  are not factually nor philosophically analogous to the case sub judice; and (2) this Court has held that a party may not be procedurally barred from raising issues for the first time on appeal if the error affects fundamental rights. Appellant's Reply Brief at 1 (citing Read v. State, 430 So.2d 832, 837 (Miss. 1983) ("Error affecting fundamental rights are exceptions to the rule that questions not raised in the trial court cannot be raised for the first time on appeal.") (quoting Brooks v. State, 209 Miss. 150, 155, 46 So.2d 94, 97 (1950)).
Alternatively, Barnes counters that the State's contention should be rejected because this Court has held: "[B]efore there can be a waiver of a constitutional right, [he] must [have been] given a meaningful and realistic opportunity to assert the right." Appellant's Reply Brief at 1 (quoting Read, 430 So.2d at 838). Barnes explains that he was not provided a "meaningful and realistic opportunity to assert the right" because he was denied effective assistance of counsel. This conveniently leads to the second issue presented on appeal.

B. Whether Barnes Was Denied Effective Assistance of Counsel?
Barnes contends that his counsel, James Fougerousse, provided him ineffective assistance. To determine Fougerousse's effectiveness, this Court must decide whether the evidence sufficiently meets the twopronged test enunciated in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), cited with approval in Wiley v. State, 517 So.2d 1373, 1378 (Miss. 1987).
Pursuant to Strickland, the record must evince (1) prejudicial (2) deficiency in counsel's performance. 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. See also Wiley, 517 So.2d at 1378 (totality of the circumstances must be considered) (citing Martin v. Maggio, 711 F.2d 1273, 1280 (5th Cir.1983), cert. denied, 469 U.S. 1028, 105 S.Ct. 447, 83 L.Ed.2d 373 (1984)). Barnes cites numerous (potentially) prejudicial deficiencies in Fougerousse's representation of him:

1.
Barnes first explains that, after nearly two years of delay, Fougerousse utterly failed to conduct even a scintilla of discovery. *842 Appellant's Brief at 6. The record reveals the following admissions which were made upon commencement of the trial:
PROSECUTOR: Your Honor ... no discovery has been requested in this case... .
.....
JUDGE: [Mr. Fougerousse, a]re you satisfied with discovery so far as you know at this point?
FOUGEROUSSE: Yes, sir.
PROSECUTOR: Your Honor, for the record, there has been no exchange of discovery at this point.
JUDGE: All right.
PROSECUTOR: There has been none requested.
FOUGEROUSSE: Your Honor, I don't know what counsel is getting at... .
JUDGE: (interposing) I can't hear you ... speak up.
FOUGEROUSSE: There's been from our end ample discovery... .
JUDGE: Well, [the prosecutor] is saying there has been no discovery and you are saying there has. I think for the record it needs to be cleared up. The only thing I see is an order for a continuance.
PROSECUTOR: Your Honor, there has been no formal request, no letter, no oral request for discovery.
Vol. II, at 3 & 7.

2.
Barnes next explains that, because Fougerousse failed to conduct discovery, the prosecutor's files went unscrutinized. That is, Fougerousse failed to peruse the file for possible exculpatory evidence, and he failed to request the trial judge to peruse it. Thus, at this point, only the prosecutor knows if exculpatory evidence exists. Appellant's Brief at 7.

3.
Prior to voir dire, the prosecutor announced that he intended to offer into evidence a misdemeanor conviction for impeachment purposes. Of course, Fougerousse was utterly surprised by the prosecutor's intention and incompetently debated the propriety of introducing the evidence. Fougerousse would not have been caught "off guard" and would not have been left virtually defenseless (speechless) had he conducted discovery and apprised himself of Barnes' record and so forth. Id. at 6-7.

4.
The following exchange, which transpired after the jury was impaneled, is another example:[1]
PROSECUTOR: Your Honor, at this time, the State would move for sanctions to be imposed on defense counsel for violation of discovery. He earlier this morning .. . advised the Court that he felt that discovery had been completed and he had told the State of his [only] witness, ... the defendant. [A] couple hours ago, he informed the State that he had other witnesses that had arrived and, Your Honor, this just simply makes a mockery of discovery. The defense counsel comes in with witnesses at the last moment and he hasn't told the State... .
FOUGEROUSSE: (interposing) Your Honor, I am gonna object to counsel's characterizations.
JUDGE: Well, you announced this morning in voir dire that you had one witness and that would be the defendant.
FOUGEROUSSE: No, sir, I did not, Your Honor. What I stated, in response to the Court's question, was that I anticipated only the defendant and am still anticipating only the defendant. I do have one other witness that I may or may not use.[2]
JUDGE: Well, the way I understood it this morning, there has been no discovery within the case... .
.....

*843 Well, just tell me, when did you discover  it's 3:00 ... and I want to get started on the trial. It's obvious that the State is not gonna ask for a continuance. When did you learn of this witness, Mr. Fougerousse?
FOUGEROUSSE: Your Honor, this witness has been around since the case began.
JUDGE: And you never bothered to tell the State that?
.....
When are you gonna furnish the State with the names and addresses of your witnesses? I understand that there had been no ... discovery so that would make the issue moot but you tell me there has been discovery so I don't know what's going on.
.....
I'll take up this matter after the case is over....
Vol. II, at 8-11. Need more be said?

5.
Barnes explains that, during trial, numerous possible violations of his constitutional rights were evinced, but Fougerousse failed to investigate the possibilities. For example, the record indicates that, after Police Officer Preston Carter arrested Barnes, he proceeded to question him without advising him of his Miranda rights. The responses which Barnes provided during his unconstitutional "custodial interrogation" should have been deemed inadmissible at trial. However, Carter revealed Barnes' responses during his (Carter's) testimony. And at no time did Fougerousse object to or question the admissibility of the testimonial revelations. Appellant's Brief at 7.

6.
Immediately upon Barnes' arrest, Carter conducted a warrantless, nonconsensual search of his (Barnes') automobile. Again, Fougerousse failed to inquire into the constitutionality of the search. Id.

7.
According to Barnes, Fougerousse failed to object to "impermissibly-elicited testimony regarding drug activity in certain areas of Jackson." The prosecutor failed to "tie" such "drug activity" to Barnes, to "any element of probable cause" for his arrest, or to the case in general. Thus, the testimony was irrelevant and, because Fougerousse failed to request that the jury be instructed to disregard the testimony, it could have been sufficiently inflammatory to prejudice Barnes' right to a fair trial. Id. at 7-8.

8.
Barnes contends that, at one point, Fougerousse unwittingly "became little more than a witness against [him]" when he (Fougerousse) "underscore[d] officer Carter's testimony" ... by making the following objection:
Your Honor, I am gonna object to this entire line of questioning. The State seems to be adducing testimony of sales and this is not a sales case. His whole testimony is going to exchanges, sales and deliveries.

Id. at 8 (Vol. II, at 27) (emphasis added).

9.
Finally, Barnes contends that the "most glaring" example of ineffectiveness of counsel regards Fougerousse's failure to raise the speedy-trial issue at the trial level. Id.

C. Disposition
The Court has carefully considered each of Barnes' claims of deficient performance on the part of his counsel and concludes without serious doubt that Fougerousse's performance was so sub-standard that he was not functioning as counsel[3] as guaranteed by the Sixth and Fourteenth Amendments and by Miss. Const. Art. 3, § 26 *844 (1890). Barnes was prejudiced thereby in the sense that there is a reasonable probability that, but for Fougerousse's errors and deficient performance, the outcome of the proceedings against him may well have been different. Barnes has established all of the elements of a claim of ineffective assistance of counsel in the Court below and, under the circumstances, the Court may only reverse and remand for a new trial. See Strickland v. Washington, supra; Leatherwood v. State, 539 So.2d 1378, 1382-88 (Miss. 1989); Yarbrough v. State, 529 So.2d 659, 661-63 (Miss. 1988); Ferguson v. State, 507 So.2d 94, 96-97 (Miss. 1987); and Waldrop v. State, 506 So.2d 273, 275 (Miss. 1987).
A word need be added about Barnes' speedy-trial claim. The Court agrees with the comment by the State in its brief that, "It would appear that [the speedy-trial statute] was violated." On the record, it seems unlikely that there was good cause for the unexplained 148 days delay beyond the statutory 270-day time period. On the other hand, the question was never presented to the trial court because, as noted above, Barnes' counsel never got around to raising the point. On remand, the Court is directed to consider whether there was good cause for the delay. If it should be that the state is unable to show good cause for enough of the delay to bring the case under the 270-day limitation, the indictment against Barnes must be dismissed, and he must be finally discharged. We cannot on the present record make this determination, but instead remand to the circuit court for that purpose.
PETITION FOR REHEARING GRANTED; REVERSED AND REMANDED FOR A NEW TRIAL.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN and PITTMAN, JJ., concur.
BANKS and McRAE, JJ., not participating.
NOTES
[1] Barnes did not cite this example in his brief.
[2] The judge and prosecutor are correct; the record reveals that Fougerousse indicated during voir dire that Barnes was his only witness. See Vol. II, at 5 (where Fougerousse explained: "[T]his trial is gonna be just straight-up testimony between the defendant and police officers and that's all it's going to be.").
[3] This Court is well aware that this is far from the only case in which Fougerousse's performance has been substantially deficient. See Fougerousse v. Mississippi State Bar Ass'n, 563 So.2d 1363, 1366 (Miss. 1990) (Fougerousse's license suspended because he "has displayed a distinct pattern of delay, tardiness and denial in the representation of certain clients and throughout his own defense of the matters now before this Court").