603 So.2d 843 (1992)
Abdusabr J. AHMAD a/k/a James Earl Coleman
v.
STATE of Mississippi.
No. 89-KA-773.
Supreme Court of Mississippi.
June 3, 1992.
Onette E.W. Johnson, Prentiss, for appellant.
Michael C. Moore, Atty. Gen., Deirdre McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before HAWKINS, P.J., and PITTMAN and BANKS, JJ.
*844 PITTMAN, Justice, for the Court:
Abdusabr J. Ahmad, also known as James Earl Coleman, was convicted by a jury of felonious child abuse and sentenced by Judge R.I. Prichard to eight years with the Mississippi Department of Corrections. Ahmad has appealed to this Court alleging that: 1) the evidence was legally insufficient to support his conviction of felonious child abuse because the requisite proof of permanent or serious disfigurement was absent; 2) the lower court erred by allowing the State to comment during closing argument on events outside the scope of admitted evidence and to interject inflammatory matters before the jury; 3) the lower court erred by denying him his constitutional right to confront his accuser who was a material witness; 4) the evidence was not sufficient to support his guilty verdict; 5) he was deprived of his constitutional right of effective assistance of counsel; and 6) the lower court erred by allowing the State to make prejudicial comments and to execute prejudicial conduct during the course of the trial. We do not agree with Ahmad's allegations of error and affirm the conviction.

I.
On July 28, 1988, Catherine Drones arrived at her Jefferson Davis County, Mississippi, home around 6:30 p.m. Drones had a message left by Rasheedah Ahmad a/k/a Jeanette Brown to go to the Ahmad home nearby. Rasheedah Ahmad was married to Abdusabr J. Ahmad a/k/a James Earl Coleman, Drones' nephew. The Ahmads were living in the home of a relative. The home did not have water, gas, or electricity. Drones went to the Ahmad home. She was met by Rasheedah Ahmad and the two Ahmad daughters. Rasheedah Ahmad told Drones that her nine-year-old son, I.A., was tied up inside the home. Drones did not go inside the home; she took Rasheedah Ahmad and the young girls to the sheriff's office in Prentiss, Mississippi.
Chief Deputy Thomas Brown was the officer on duty when Drones arrived with the Ahmad women. Brown went to the Ahmad home along with Drones and the Ahmad women. They arrived at the home at 7:20 p.m. Abdusabr Ahmad was not at home. The house was dark. Brown used his flashlight and found I.A. tied to an old iron frame bed. I.A. was calm. The young boy was tied with duct tape. I.A. was unable to get loose and unable to move. I.A. was tied by his hands which were crossed over his head. Brown couldn't get I.A. loose by pulling at the tape. Brown got a butcher knife from a neighbor and cut I.A. free from the bed. Brown took I.A., Rasheedah Ahmad, Drones, and the young girls back to the sheriff's office. I.A. was emotional and upset when they left the house.
At the sheriff's office, Brown took I.A.'s shirt off and found an abundance of scars but did not find any fresh wounds. Brown took pictures of I.A.'s back. Brown did not take I.A. to a doctor. I.A. was not bleeding and said he was not in any pain. The wounds on his back had healed.
Besides Drones and Brown, I.A. gave testimony for the prosecution at trial. I.A. explained that his father, Abdusabr Ahmad, had taped him to the bed because I.A. had forgotten something. I.A. also showed the scars on his back to the jury. He explained that the scars were the result of a whipping with an extension cord by his father.
Defense counsel did not present any witnesses. Defense counsel did argue in his opening statement that Abdusabr Ahmad had different childrearing views due to his Muslim faith.
The jury deliberated 59 minutes and returned a guilty verdict.

II.
Abdusabr Ahmad argues that Miss. Code Ann. § 97-5-39 (Supp. 1988) requires a showing of serious bodily injury and mayhem, or permanent or crippling injury, and that the State did not make such a showing sufficient to support a conviction of felonious child abuse. The State argues that the statute demands no proof of infliction of serious bodily injury or of mayhem. The State asserts that the prosecution met the proof requirements of the statute. The *845 State is correct. The requisite statutory showing was made, and the evidence sufficiently supported the conviction.
Section 97-5-39, as in effect at the time of the offense, read in part:
Any person who shall intentionally burn or torture, or, except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse or mutilate any child in such a manner so that any bone is fractured or any part of the body of such child is mutilated, disfigured or destroyed, shall be guilty of felonious child abuse....
Clearly, the statute does not use the phrase "serious bodily injury" or "mayhem". In fact, mayhem is a separate statutory offense pursuant to Miss. Code Ann. § 97-3-59. The State put on proof through the testimony of its three witnesses that Abdusabr Ahmad tortured, whipped, struck, and abused I.A. The State also put on proof that Abdusabr caused I.A. to be disfigured. Without legislative guidance to the contrary, words of a statute or act should be ascribed their ordinary and usual meaning. Pearl River Valley Water Supply Dist. v. Hinds County, 445 So.2d 1330, 1334 (Miss. 1984). The Oxford American Dictionary (1980) defines "disfigure" as "to spoil the appearance of". The State certainly identified scars on I.A.'s back which were present at trial, ten months after Brown had freed the boy from the bed. The appearance of the young boy's back had been marred. The State met the requirements for conviction under the felonious child abuse statute, § 97-5-32.
The evidence was also legally sufficient to support Abdusabr Ahmad's conviction. This Court spoke to the standard of review applicable in criminal cases wherein the verdict of the jury is challenged on the weight of the evidence in Wetz v. State, 503 So.2d 803 (Miss. 1987):
[W]e must, with respect to each element of the offense, consider all of the evidence  not just the evidence which supports the case for the prosecution  in the light most favorable to the verdict. Harveston v. State, 493 So.2d 365, 370 (Miss. 1986); Callahan v. State, 419 So.2d 165, 174 (Miss. 1982); Sadler v. State, 407 So.2d 95, 97 (Miss. 1981). The credible evidence which is consistent with the guilt must be accepted as true. Spikes v. State, 302 So.2d 250, 251 (Miss. 1974). The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Hammond v. State, 465 So.2d 1031, 1035 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984); Glass v. State, 278 So.2d 384, 386 (Miss. 1973). Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. Neal v. State, 451 So.2d 743, 758 (Miss. 1984); Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980). We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. Harveston v. State, 493 So.2d 365, 370 (Miss. 1986); Fisher v. State, 481 So.2d 203, 212 (Miss. 1985).
Wetz, 503 So.2d at 808.
Abdusabr Ahmad argues that his conviction was not sufficiently supported by the evidence. This argument is without merit. A reasonable and fair-minded jury could have found him guilty. No evidence or testimony was introduced at trial by defense counsel. The only evidence for jury consideration was the evidence presented by the State. I.A. himself testified that the scars and taping were results of his father's actions. Physical evidence of the scars and the taping were introduced. The conviction is supported by the evidence.

III.
Abdusabr Ahmad asserts that the prosecutors exceeded the permissible scope of closing argument and introduced irrelevant, immaterial, inflammatory matters before the jury. Abdusabr Ahmad refers specifically to comments about his religious preference.
In the initial closing argument of the State, the prosecutor commented:

*846 Is there any doubt at all in your minds, reasonable or otherwise, based on the evidence in this case, that this boy was tortured, whipped, struck and abused? You know, we get incensed when we hear that our soldiers are treated a particular way when they're captured and made prisoners of war, when people in our embassies are captured by people and abused. There's no hesitation on us to see that for what it is  torture, beatings. And the same thing happened to this child.
Abdusabr Ahmad also finds additional comments by the State in closing objectionable, to wit:
But, you know, the scars on the outside of that child are nothing compared to the scars on the inside. You imagine. You know, it's not unusual for a child, or anyone who's been tortured, to just want acceptance from the person who's abusing them, whether it's a prisoner of war, whether it's a person who's in a hostage situation, or whether it's a child being abused at home. They want acceptance. They want the love of the person who's dominating them. They want to be left alone.
Abdusabr Ahmad argues that the references to hostages and prisoners of war brings to mind the Arab countries, such as Lebanon, where the dominant religion is Muslim and where Americans have been taken hostage and sometimes killed. He argues that the State wanted to remind the jury that people with Muslim names of the Muslim religion captured Americans at the U.S. Embassy in Beiruit, Lebanon, and tortured them. Abdusabr Ahmad asserts that the State was trying to inflame the jury.
Generally, attorneys on both sides in a criminal prosecution are given broad latitude during closing arguments. See Neal v. State, 451 So.2d 743 (Miss. 1984), cert. denied 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984); Bullock v. State, 391 So.2d 601 (Miss. 1980), cert. denied 452 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981). This Court has explained that not only should the State and defense counsel be given wide latitude in their arguments to the jury, but the court should also be very careful in limiting free play of ideas, imagery, and personalities of counsel in their argument to jury. See Johnson v. State, 477 So.2d 196 (Miss. 1985), cert. denied 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986), reh'g denied 476 U.S. 1189, 106 S.Ct. 2930, 91 L.Ed.2d 557 (1986). Given the latitude afforded an attorney during closing argument, any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety. See U.S. v. Bright, 630 F.2d 804 (5th Cir.1980); U.S. v. Austin, 585 F.2d 1271 (5th Cir.1978).
This Court has found reversible error where a prosecutor informed the jury that the defendant was a "professional criminal". Ellis v. State, 254 So.2d 902, 904 (Miss. 1971). A prosecutor should not indulge in personal abuse or vilification of the defendant. Bridgeforth v. State, 498 So.2d 796, 801 (Miss. 1986).
Remembering the wide latitude afforded prosecutors in closing arguments, the comments by the State when arguing for a conviction of Abdusabr Ahmad were not improper. Taken in context, the referral to prisoners of war was part of the free play of ideas, imagery, and personalities allowed in closing arguments. The referral to prisoners and hostages does not vilify Abdusabr Ahmad. It is a characterization of I.A.'s position on the day in question. It is not name-calling or a label on Abdusabr Ahmad's overall character. The State did not state per se that Abdusabr Ahmad was an Arab captor. The State did not even compare Abdusabr Ahmad to Arab captors. The State simply compared I.A.'s emotions to that of a prisoner of war or hostage.
Further, defense counsel did not object to the prisoner of war and hostage references when made at trial. Thus, the objection is not preserved on appeal. Abdusabr Ahmad's failure to object to the references at the trial level and failure to include the references in a motion for a new trial obviates his ability to assign the comments as error in this appeal. In Mississippi, *847 the broad rule governing preservation for review provides that if an appellant raises for review an issue not raised in the pleadings, transcript, or rulings, the appellant must have preserved the issue by raising it in a motion for new trial. Miss. Code Ann. § 9-13-31 (Supp. 1990); Jackson v. State, 423 So.2d 129, 131 (Miss. 1982) citing Colson v. Sims, 220 So.2d 345, 346 n. 1 (Miss. 1969); see also Griffin v. State, 495 So.2d 1352, 1353 (Miss. 1986). The rationale for this rule is based on the policy of giving the trial judge, prior to appellate review, the opportunity to consider the alleged error. Howard v. State, 507 So.2d 58, 63 (Miss. 1987); Cooper v. Lawson, 264 So.2d 890, 891 (Miss. 1972) citing Clark v. State, 206 Miss. 701, 39 So.2d 783, suggestion of error overruled 206 Miss. 701, 40 So.2d 591 (1949). In sum, Abdusabr Ahmad is procedurally barred from raising this error on appeal.

IV.
Abdusabr Ahmad urges this Court to find reversible error because his constitutional right to confront his accuser was denied. Abdusabr Ahmad argues that his accuser is his wife and that he was not allowed to "confront" her. While he is correct that the Sixth Amendment of the U.S. Constitution guarantees a defendant the right to confront an accuser which includes the right of cross examination, see Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969); Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), Abdusabr Ahmad was not deprived of that right. As the State has pointed out, neither the appellant, nor the court, instructs the State what witnesses that party shall put on the stand or how that party shall present its case. Hickson v. State, 512 So.2d 1 (Miss. 1987). The State in the case at bar could not be required to present every witness, although Abdusabr Ahmad did have the right to cross examine any witness that the State did present. The record reveals that Abdusabr Ahmad was allowed to fully cross examine all State witnesses against him. Rasheedah Ahmad was not a witness at the trial. There is no indication in the record that his wife, Rasheedah Ahmad, ever accused him of felonious child abuse.

V.
Abdusabr Ahmad asserts on appeal that the felonious child abuse statute, Miss. Code Ann. § 97-5-39, required a showing of continuing abuse toward the child and that the evidence was not sufficient to support a verdict that he was guilty of such abuse. Abdusabr Ahmad is incorrect. The statute does not require such a showing. The statute never mentions "continuing abuse", only "abuse". Even if continuing abuse were required, the State showed that the harm to I.A. occurred over a period of time. The photographs reveal scars and bruises in various stages of healing. I.A.'s own testimony reveals that he was abused on at least two occasions, when he was beaten with an extension cord and when he was tied to the bed with duct tape. Accepting as true all the evidence which supports the State's position, together with all inferences reasonably flowing therefrom, in the light most favorable to the State's theory of the case, Britt v. State, 520 So.2d 1377, 1379 (Miss. 1988), any reasonable and fair-minded juror could have found that Abdusabr Ahmad was guilty of abuse, even continual abuse. The evidence was sufficient to support a conviction of child abuse.

VI.
Abdusabr Ahmad's counsel asserts that he was not an effective counsel for his client at trial due to his failure to protect Abdusabr Ahmad's right to confront an accuser, his failure to bring to the attention of the court mitigating circumstances and a motive for the abuse, and his discontinuation of cross examination into motive and elaboration on inconsequential matters of cross examination. We do not find Abdusabr Ahmad's counsel ineffective.
Barnes v. State, 577 So.2d 840, 841-43 (Miss. 1991) citing Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), is instructive on this issue. To determine whether Abdusabr Ahmad received ineffective assistance of counsel, he must present sufficient evidence *848 to meet the two-pronged Strickland test. He must prove that, (1) under the totality of the circumstances, prejudice resulted (2) from a deficiency in his counsel's performance. Strickland, 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693; Martin v. Maggio, 711 F.2d 1273, 1280 (5th Cir.1983); Barnes, 577 So.2d at 841-843; Wiley v. State, 517 So.2d 1373, 1378 (Miss. 1987).
Justice Anderson, for this Court, excellently explained that a defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result would have been different. Fisher v. State, 532 So.2d 992, 997 (Miss. 1988).
Abdusabr Ahmad clearly fails to meet the Strickland test. He simply cited actions of his counsel without explaining or justifying his contention that they should be characterized as deficient and prejudicial. The evidence in the record proves beyond a reasonable doubt that Abdusabr Ahmad abused I.A. and that his counsel's alleged deficiencies could not have affected the outcome of the case. Defense counsel's variety of "errors" cannot be presumed to be prejudicial to the outcome of Abdusabr Ahmad's trial. This Court's scrutiny of his counsel's performance must be deferential. See Strickland, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. Abdusabr Ahmad has made no showing of prejudice and thus cannot gain relief. He has not shown that the result would have been different if his counsel had not made the named errors. There is no reason to believe that a more thorough cross examination would have changed the outcome. Further, defense counsel did not deprive Abdusabr Ahmad of his confrontation right, as discussed in the third assignment of error, supra, of this appeal.

VII.
Abdusabr Ahmad claims that the lower court erred by allowing the State to make comments and to execute conduct during the trial which were prejudicial. He bases this assignment of error on the same two closing argument comments complained of in the second assignment of error. As explained supra, the comments made by the State during closing arguments which compared I.A.'s emotions to that of a hostage or prisoner were not prejudicial. It was within the wide discretion allowed in closing statements and was part of the free play of imagery permitted in such argument. See Neal v. State, 451 So.2d 743 (Miss. 1984), cert. denied 469 U.S. 1098, 105 S.Ct. 607, 83 L.Ed.2d 716 (1984); Bullock v. State, 391 So.2d 601 (Miss. 1980), cert. denied 452 U.S. 931, 101 S.Ct. 3068, 69 L.Ed.2d 432 (1981); Johnson v. State, 477 So.2d 196 (Miss. 1985), cert. denied 476 U.S. 1109, 106 S.Ct. 1958, 90 L.Ed.2d 366 (1986), reh'g denied 476 U.S. 1189, 106 S.Ct. 2930, 91 L.Ed.2d 557 (1986).

VIII.
Because there was sufficient evidence to support a guilty verdict under the felonious child abuse statute, because the State did not make prejudicial comments during the closing argument, and because Abdusabr Ahmad was not deprived of his constitutional rights to confront an accuser and to procure effective assistance of counsel, we affirm the conviction of Abdusabr Ahmad.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.