973 So.2d 254 (2007)
Marquette RANDOLPH, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02233-COA.
Court of Appeals of Mississippi.
August 7, 2007.
Rehearing Denied January 22, 2008.
*257 Herbert H. Klein, attorney for appellant.
Office of the. Attorney. General by John R. Henry, attorney for appellee.
Before KING, C.J., IRVING and ROBERTS, JJ.
IRVING, J., for the Court.
¶ 1. Marquette Randolph was convicted by a jury of attempted possession of more than thirty grams of cocaine and was sentenced by the Jones County Circuit Court to twenty years with five years suspended and fifteen years to serve in the custody of the Mississippi Department of Corrections. Aggrieved, he appeals and asserts the following issues, which we quote verbatim:
I. The. Trial Court erred in denying the Motion to Suppress Evidence.
II. The Trial Court erred in preventing cross-examination regarding fingerprinting analysis.
III. The Trial Court erred in preventing Defendant from presenting his theory of defense.
IV. The Trial Court erred in, preventing Defendant from testifying regarding his earlier statements.
V. The Trial Court erred in giving State's Jury Instruction "S-1-A" without the circumstantial evidence language and in refusing Defendant's Jury Instructions "D-4", "5", "D-8", "D-10", "D-11", "D-12", and "D-13" containing circumstantial evidence language.
VI. The Trial Court erred in giving State's Jury Instruction "S-2" as a lesser included offense instruction.
VII. The Trial Court erred in allowing the Assistant District Attorney to make inflammatory statements during closing argument.
VIII. The Trial Court erred in overruling Defendant's Motion for [a] New Trial or in the Alternative Judgment Notwithstanding the Verdict.
IX. The cumulative effect of the errors committed by the Trial Court were [sic] of a prejudicial effect and prevented the Defendant from receiving a fair trial.
¶ 2. Finding no reversible error, we affirm.
FACTS
¶ 3. On July 8, 2003, Randolph drove his blue Ford Crown Victoria to the home of Terrence Shanks, located on Bartlett Street in Laurel, Mississippi. Randolph parked his vehicle on the street in front of Shanks's home. Shanks approached Randolph's car and sat in the passenger's seat. As they sat in Randolph's car, Randolph attempted to convince Shanks to give him one-half gram of cocaine on credit.
¶ 4. During this time, Trea Staples and Mitchell Van Syckel, narcotics agents with the Laurel Police Department at the time of the incident, were conducting surveillance of the area. The officers noticed that Randolph's car was parked facing eastbound in the westbound lane of traffic. The officers passed Randolph's car and continued down the street before turning around and parking their unmarked Ford Expedition nose to nose with Randolph's car. The officers exited their vehicle and approached Randolph's car. At this point, Shanks exited Randolph's car, emptied a beer bottle onto the street, and threw the bottle into a nearby, garbage can. The City of Laurel has an ordinance prohibiting public possession of open containers of alcohol. According to Staples, while he was speaking with Shanks about Shanks's violation of the open container ordinance, *258 he noticed that Van Syckel had become involved in a foot pursuit with Randolph, so he radioed for backup to assist Van Syckel.
¶ 5. Van Syckel testified that as he approached Randolph's car he observed Randolph moving in the driver's seat. As a result, Van Syckel suspected that Randolph was either retrieving something from underneath his seat, or trying to hide something under the seat. Concerned, Van Syckel hurried to the driver's door and instructed Randolph to exit the vehicle. At this point, Van Syckel noticed two clear plastic bags sitting on the seat that contained what appeared to be a powdery white substance.
¶ 6. Randolph fled the scene and Van Syckel gave chase. In short order, Van Syckel caught Randolph, handcuffed him, and waited for a patrol officer to arrive. When an officer arrived, Van Syckel put Randolph in the patrol car and walked back to where Randolph's car was parked.
¶ 7. While Van Syckel was involved in the foot pursuit with Randolph, Staples took Shanks into custody. Staples escorted Shanks over to the driver's side of Randolph's car. Staples testified that the door to the car was open, and that he also saw two bags that contained a white powdery substance sitting on the front seat Staples also stated that a pat down of Shanks revealed that he had $1,300 in his pants pocket
¶ 8. When Van Syckel arrived back at the original scene, he noticed that the two bags that were on Randolph's seat had been moved to the roof of the car. Van Syckel returned the bags to the driver's seat and took pictures of them. Sergeant Layne Bounds of the Laurel Police Department conducted an inventory search of Randolph's car, during which he found three additional bags also containing a white powdery substance between the driver's seat and the "hump" that is located in the center of the car.
¶ 9. Later, Staples and Van Syckel obtained a search warrant and searched Shanks's house. As a result of the search, they found clear plastic sandwich bags, a set of scales, money, and money wrappers. According to Staples, sandwich bags similar to the bags found in Shanks's house are sometimes used to package and sell units of cocaine. Testing revealed that all of the bags found in Randolph's car contained cocaine. The five bags of cocaine weighed a total of 120.36 grams.
¶ 10. On July 21, 2004, the Jones County Grand Jury returned an indictment against Randolph and charged him with possession of approximately 120.36 grams of cocaine. Randolph filed a motion to suppress the admission of, among other things, the bags of cocaine, arguing that the evidence was obtained due to an illegal arrest and an illegal search and seizure. On' October 13, 2005, Randolph went to trial. After jury selection, Randolph's counsel brought his unresolved motion to suppress to the court's attention. The court conducted a suppression hearing and overruled Randolph's motion.
¶ 11. Randolph took the stand and testified on his own behalf. Randolph stated that in July 2003, he was addicted to cocaine, was unemployed, and was dependent on his family for financial assistance. Specifically, he testified that on July 8, 2003, he attempted to get Shanks to "[g]ive [him] some cocaine on credit." Randolph testified, that he is not guilty of possession of cocaine because he attempted to get cocaine, but failed to do so because he was interrupted by Staples and Van Syckel. The court allowed the State to submit an attempted possession instruction to the jury. Jury instruction S-2 instructed the jury that it could convict Randolph of attempted *259 possession of cocaine if it found that Randolph was not guilty of possession of cocaine. Randolph objected, but the court allowed the instruction over his objection. Thereafter, Randolph was convicted by the jury of attempted possession of cocaine.
¶ 12. Additional facts, as necessary, will be related during our analysis and discussion of the issues.

ANALYSIS AND DISCUSSION OF THE ISSUES
1. Motion to Suppress
¶ 13. "In reviewing the denial of a motion to suppress, this Court looks to determine whether the trial court's findings, considering the totality of the circumstances, are supported by substantial credible evidence." Jim v. State, 911 So.2d 658, 660(¶ 9) (Miss.Ct.App.2005) (citing Evans v. State, 823 So.2d 617, 621(¶ 18) (Miss.Ct.App.2002)). "Where supported by substantial credible evidence, this Court shall not disturb those findings." Id.
¶ 14. As previously stated, Randolph filed a motion to suppress evidence. In that motion, he argued that the evidence seized from his car was inadmissible as fruit of the poisonous tree. Randolph contends that Staples and Van Syckel approached his car without probable cause or reasonable suspicion. The State responded, and the trial judge agreed that Randolph's car was parked illegally. However, the State has not pointed to any ordinance or statute making it illegal to park on the street in front of a house in a residential neighborhood.[1] Despite the State's failure to cite any authority for its position, we agree that Randolph was illegally parked, since Mississippi Code Annotated section 63-3-907 (Rev.2004) requires all, vehicles stopped or parked upon a roadway, where there is an adjacent curb, to be parked "with the right-hand wheels of such vehicle parallel with and within twelve inches of the right-hand curb."
¶ 15. In INS v. Delgado, 466 U.S. 210, 216, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984), the United States Supreme Court held that:
Although we have yet to rule directly on whether mere questioning of an individual by a police official, without more, can amount to a seizure under the Fourth Amendment, our recent decision in [Florida v. Royer, 460 U.S. 491, 502, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)] plainly implies that interrogation relating to one's identity or a request for identification by the police does not, by itself, constitute a Fourth Amendment seizure.
The court further held, "police questioning, by itself, is unlikely to result in a Fourth Amendment violation." Id.
¶ 16. Therefore, if officers are not prohibited from approaching a person and interrogating him relating to his identity, it seems only logical that officers have the inherent authority to approach a vehicle, parked on a public street, even one that is parked legally. Randolph's act of fleeing the scene and Shanks's act of pouring out the beer gave the officers probable cause to believe that the men were involved in illegal activity. We find no merit to this issue.
2. Cross Examination Regarding Fingerprint Analysis
¶ 17. This Court reviews a trial court's decision to exclude evidence pursuant *260 to an abuse of discretion standard. Stallworth v. State, 797 So.2d 905, 908(¶ 8) (Miss.2001), (citing Floyd v. City of Crystal Springs, 749 So.2d 110, 113(¶ 12) (Miss. 1999)).
¶ 18. In this issue, Randolph argues that the trial court abused its discretion by prohibiting his attorney from cross-examining Staples regarding whether officers conducted a fingerprint analysis of the bags of cocaine. The following exchange occurred during the cross-examination of Staples:
Q. Did you send [the bags of cocaine] off to the crime lab for fingerprints?
A. I don't recall if they were analyzed for latent prints or not.
Q. You didn't request it though.
[ATTORNEY FOR STATE]: Your Honor, I'm going to object to this. He stipulated. We didn't go into it because he stipulated that was cocaine found in the car.
THE COURT: Sustained.
¶ 19. Randolph based his defense on the theory that he only attempted to possess cocaine; but never actually possessed cocaine. According to Randolph, the cocaine belonged to Shanks; therefore, possession and ownership of the cocaine were central issues. Randolph's question was relevant to determine whether anyone examined the bags of cocaine for fingerprints; and if so, whether Randolph's fingerprints were discovered. "`Relevant Evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." M.R.E. 401, Whether Randolph's fingerprints appeared on the bag tends to make it more or less probable that he possessed the cocaine, either actually or constructively.
¶ 20. We agree that the trial court erred in refusing to allow Randolph's attorney the opportunity to cross-examine Staples about whether the bags of cocaine were analyzed for latent fingerprints. However, even had the most favorable testimony possible been elicited regarding the fingerprints, that evidence would have had no bearing on Randolph's attempt conviction. Furthermore, we find that the error was harmless because Randolph was convicted of attempting to possess cocaine, and he admitted that he met with Shanks in an attempt to get Shanks to give him cocaine on credit.
3. Search of Shanks's House
¶ 21. As in the previous issue, this issue also arises from Randolph's cross-examination of Staples. Specifically, this issue concerns the trial court's decision to prohibit Randolph from demonstrating that Shanks was a cocaine dealer and that Randolph was an abuser of cocaine. Randolph claims that he intended to show that Shanks had paraphernalia indicative of his status as a cocaine dealer in his house. Randolph's attorney attempted to ask Staples about the search of Shanks's house: "And, y'all conducted a search of [Shanks's] home?" Staples answered, "That's correct." The State objected and stated, "Your Honor, I'm going to object to moving on past this incident to a search of somebody's house that's not on trial." The trial court sustained the State's objection.
¶ 22. Randolph's attorney then stated, "Your Honor, if I may, this goes to the heart of our defense. There was may I be heard outside the presence of the jury?" The trial court allowed Randolph's attorney to approach the bench. According to the record, a bench conference occurred, but the conference was not reported and it does not appear in the record. Regardless, the trial court allowed Randolph's *261 attorney to make a proffer. During this proffer, Staples stated that the search of Shanks's home uncovered bags similar to the bags found in Randolph's car, a digital set of scales, money, and $1,000 bank bands, which are used to wrap money. After Randolph's attorney coneluded his proffer, he stated:
[ATTORNEY FOR DEFENDANT]: Your Honor, when we attempted on cross-examination to go into the search warrant, our defense is that the drugs in the car belonged to and were possessed by Terrance Shanks to the exclusion of Marquette Randolph. They obtained evidence in the home of Terrance Shanks that corroborates and verifies our defense that all that dope belonged to Terrance Shanks to the exclusion of Marquette Randolph. To not be able to further our defense that it's not his dope makes it impossible for us to put forth a complete defense.
THE COURT: My ruling stands. It's two different venues. One, as you call it, one set of dope or one amount of dope, where it was versus where another amount of dope was. You have a co-indictment here, but you also asked that there be a severance. And there's been a severance. Whatever Shanks' dope has nothing to do with the dope in this case. This man is being tried based on his involvement in the dope at hand.
Randolph contends that the trial court erred. We disagree. The fact that drug paraphernalia was found in Shanks's home is irrelevant, and does not tend to prove that the drugs found in Randolph's car belonged to. Shanks and not to Randolph. However, assuming that such testimony was relevant, we find this error to be harmless. As previously stated, Randolph was convicted of attempted possession of cocaine. Randolph, by his own admission, testified that he was trying to possess cocaine from Shanks at the time the officers approached his car. Thus, this issue lacks merit.
4. Randolph's Prior Statements
¶ 23. On direct examination Randolph attempted to testify about an exchange that occurred between Randolph and Shanks after they had bonded out of jail. The record reflects the following:
Q. Now, you were booked and then you bonded out?
A. Yes.
Q. Okay. Did you have an opportunity to see Terrance Shanks after that?
A. Yes. Afterwe actually was bonded out together. And that's when I saw him, after we bonded out.
Q. Did you speak with him?
A. Yes.
Q. What did you ask him?
A. I asked him was he
The State objected and the trial court sustained the objection. Randolph argued that his attorney was simply trying to elicit from Randolph what he asked Shanks and not what Shanks said to Randolph. Again, the trial court sustained the objection and stated, "[w]hat good would it do if he can't answer what [Shanks] said. I sustain."
¶ 24. We find no abuse of discretion. Randolph argues that his response would not have been hearsay pursuant to Rule 801(d)(1)(B) of the Mississippi Rules of Evidence which provides that a statement is not hearsay if:
The declarant testifies at the trial Or hearing and is subject to cross-examination concerning the statement, and the statement is . . . (B) consistent with his testimony and is offered to rebut an express or implied charge against him of *262 recent fabrication or improper influence or motive.
However, we do not find Rule 801(d)(1)(B) applicable to the facts of this case because the testimony was not offered "to rebut an express or implied charge against Randolph of recent fabrication or improper influence or motive." Nevertheless, if Randolph's own statement, made prior to trial, was offered for the truth of the matter asserted within it, it would be hearsay. As we read the record and the trial judge's ruling, it was Shanks's response to Randolph, not Randolph's question to Shanks that Randolph sought to have admitted. Randolph was not attempting to prove the truth of the contents of his question to Shanks, but rather Shanks's response to the question. Presumably, Randolph would have testified about some exculpatory statement made by Shanks after their arrest. However, Randolph's testimony about what Shanks said to him in response to his question would have been hearsay. Therefore, allowing the jury to hear what Randolph asked Shanks would not have benefitted Randolph because he actually wanted to get Shanks's response before the jury. Thus, although Randolph's prior statement would not have been hearsay, the trial judge's refusal to allow it to come into evidence resulted in no prejudice to Randolph. As such, we find no merit to this issue.
5. Denial of Circumstantial Evidence Instructions
¶ 25. Randolph argues that the trial court erred in granting the State's instructions, which did not, include circumstantial evidence language, and in denying his instructions which did include such language. The State contends that a circumstantial evidence instruction was unnecessary because "[t]here was testimony of eyewitnesses who saw [Randolph] in control and dominion of the vehicle in which cocaine was found." Specifically, the State argues that "[t]his was direct evidence." We disagree. The eyewitness testimony only tended to prove that Randolph was making movements in the driver's seat shortly before Van Syckel approached Randolph's car. Therefore, we find that the trial court erred in refusing to allow circumstantial evidence language to be included in the jury instructions. Nevertheless, Randolph was convicted of attempted possession, and there was direct evidence of the attempt in the form of his admission to attempting fo possess cocaine from Shanks. Therefore, we again find the trial court's error to be harmless, as Randolph was convicted of attempted possession. There is no merit to this issue.
6. Lesser Included Offense Instruction
¶ 26. In this issue, we understand Randolph's argument to be similar to the argument in his previous issue, in that he contends that the State's jury instruction, S-2, should, have contained circumstantial evidence language. Instruction S-2 reads as follows:
The Court instructs the jury that if you fail to find beyond a reasonable doubt that the defendant, MARQUETTE RANDOLPH, possessed the cocaine in question, then and only then you must consider the lesser included offense of attempted possession of cocaine.
The Court further instructs the jury that the defendant, MARQUETTE RANDOLPH, is guilty of attempted possession of cocaine if you find from the evidence in this case beyond a reasonable doubt that MARQUETTE RANDOLPH met with Terrance Shanks by driving to meet him for the purpose of purchasing cocaine, more than thirty (30) grams, and that he was prevented from making the cocaine purchase only *263 because of the arrival of Laurel Narcotic Police Officers.
If the State has failed to prove beyond a reasonable doubt that the defendant, MARQUETTE RANDOLPH, attempted to purchase cocaine, more than thirty (30) grams, and he was prevented from doing so by the arrival of Laurel Narcotic Police Officers, then you shall find him not guilty of attempted possession of cocaine more than thirty (30) grams.
Randolph makes several arguments in this issue: (1) that there was no evidentiary basis for the attempt instruction, because he was only trying to possess one-half gram, and not more than thirty grams, as stated in the instruction, (2) that attempt is not a lesser-included offense of possession, and (3) that he cannot be convicted of attempt when the crime charged in his indictment was possession of cocaine.
¶ 27. Mississippi Code Annotated section 99-19-5(1) (Supp.2006) provides:
On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or if any attempt to commit the same offense, or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment, whether the same be a felony or misdemeanor, without any additional count in the indictment for that purpose.
Thus, section 99-19-5 makes clear that a jury may find a defendant guilty of the offense as charged, or any attempt to commit the same offense, or the jury may find him guilty of an inferior offense on an indictment for any offense. Therefore, this issue lacks merit.
7. Improper Statements by Prosecution
¶ 28. Randolph contends that the following references made by the State during its closing argument unduly influenced the jury:
You know, I just listen rabbit trail, rabbit trail, rabbit trail. Talk about who moved the dope. I didn't kill the woman. I know she was in my back seat, but turn me loose. The cops moved the body and put it back.
[ATTORNEY FOR DEFENDANT]: Objection, Your Honor. He's talking about murder now.
[ATTORNEY FOR THE STATE]: I'm giving an example.
THE COURT: Keep your argument within the facts of the case.
[ATTORNEY FOR THE STATE]: Well, let's just say I got 100 pounds of cocaine on the bark seat.
[ATTORNEY FOR DEFENDANT]: Again, Your Honor, that's outside. 100 pounds, what are we talking about? 100 pounds of cocaine.
THE COURT: Stick to the facts.
* * * *
[ATTORNEY FOR STATE]: His defense in this case is, I didn't commit a crime. The cops caught me before I could do it. Boy, that's a new one, ain't it. I didn't rob the bank. They stopped me before I could do it. I didn't shoot the woman. They stopped me before I cold [sic] do it.
[ATTORNEY FOR DEFENDANT]: Objection, Your Honor. Talking about robbing banks and
[ATTORNEY FOR STATE]: I didn't do this. I didn't do anything.
THE COURT: Yell want me to rule on it or just blab on? I'm up here for a purpose. When somebody makes an objection, you stop and let me make the proper ruling. Overruled. Go ahead.
*264 ¶ 29. "The standard of review that appellate courts must apply to lawyer misconduct during opening statements or closing arguments is whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." Slaughter v. State, 815 So.2d 1122, 1130(¶ 45) (Miss.2002) (citing Sheppard v. State, 777 So.2d 659, 660(¶ 7) (Miss.2000)).
¶ 30. It is well established that "attorneys are allowed wide latitude in closing arguments." Id. at 1132(¶ 55) (citing Holly v. State, 716 So.2d 979, 988(¶ 33) (Miss.1998)). In Ahmad v. State, 603 So.2d 843, 846 (Miss.1992), the Mississippi Supreme Court held that "the court should . . . be very careful in limiting free play of ideas, imagery, and personalities of counsel in their argument to [a] jury." Moreover, the Ahmad court stated, "any allegedly improper prosecutorial comment must be considered in context, considering the circumstances of the case, when deciding on their propriety." Id. Furthermore, the Mississippi Supreme Court has held that "[t]he trial judge is in the best position a[sic] to determine if an alleged objectionable remark has a prejudicial effect." Slaughter, 815 So.2d at 1132(¶ 55) (citing Roundtree v. State, 568 So.2d 1173, 1177 (Miss.1990)).
¶ 31. As is readily apparent from the above exchange, the trial judge overruled the objections, while instructing the State to stick to the facts of the case. This issue lacks merit, as we cannot conclude that the natural and probable effect of the State's argument was to create unjust prejudice against Randolph.
¶ 32. Randolph also argues that the State improperly made a "send the message" argument to the jury in its closing argument. We note at the outset that this issue is procedurally barred due to Randolph's failure to object at trial. "In order to preserve an issue for appeal, counsel must object. The failure to object acts as a waiver." Havard v. State, 928 So.2d 771, 791(¶ 34) (Miss.2006) (quoting Carr v. State, 873 So.2d 991, 1004(¶ 35) (Miss.2004)). Procedural bar notwithstanding, we address this issue on its merits.
¶ 33. Randolph contends that this case should be reversed because of the following statements made by the prosecutor:
This crap, this cocaine is in your community. If you want people like him to keep on doing it, you can turn him loose.
* * * *
We don't need to allow that kind of mess to happen. You do what you think is right, not what me or him [sic], for community and we'll be satisfied.
¶ 34. We agree with Randolph that the State's "send a message" argument was improper. However, in light of Randolph's admission, and his failure to object, we conclude that this error was harmless.
8. Sentencing
¶ 35. Randolph contends that the trial court erroneously sentenced him based on facts which were not presented at trial. Specifically, Randolph argues that "the [t]rial [c]ourt allowed and considered evidence that the [d]efendant purchased large amounts of baking soda commonly used to cut cocaine and to cook crack." Randolph also argues that the court considered evidence that demonstrated that he was "one of the major cocaine players in Laurel, Mississippi."
¶ 36. Our review of the record reveals that these statements were made after Randolph's attorney told the court that *265 Randolph had been "clean and sober" since his arrest. Thus, the State was offering a rebuttal to the defense's claim. Furthermore, we point out that there is nothing in the record that indicates that the trial judge took this information into consideration when he sentenced Randolph. This issue lacks merit.
9. Sufficiency and Weight of the Evidence
¶ 37. Randolph complains about the denial of his motion for a judgment notwithstanding the verdict and the denial of his motion for a new trial. A motion for a judgment notwithstanding the verdict challenges the legal sufficiency of the evidence presented at trial. Foster v. State, 919 So.2d 12, 15(¶ 14) (Miss.2005). The. Mississippi Supreme Court has held that in cases where the facts point overwhelmingly in favor of the appellant "that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render." Id. (quoting Cmty. Bank v. Courtney, 884 So.2d 767, 772(¶ 9) (Miss.2004)). However, the Court also stated that "if there is substantial evidence in support of the verdict, that is, evidence of such quality and weight that reasonable and fair minded jurors in the exercise of impartial judgment might have reached different conclusions, affirmance is required." Id. In making this determination, we "consider the evidence in the light most favorable to the appellee, giving that party the benefit of all favorable inference that may be reasonably drawn from the evidence." Id.
¶ 38. Applying this standard to the facts in the present case, we find that the evidence was sufficient to sustain Randolph's conviction. The evidence is clear that Randolph attempted to possess cocaine from Shanks. The testimony of Staples and Van Syckel, as well as Randolph's own admission, prohibits us from reaching a contrary conclusion. Therefore, we find that a reasonable jury could find Randolph guilty beyond a reasonable doubt of attempted possession of more than thirty grams of cocaine.
¶ 39. A motion for a new trial challenges the weight of the evidence used to sustain the conviction. Carter v. State, 743 So.2d 985, 989(¶ 25) (Miss.1999). "Only when the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal." Id. (quoting Herring v. State, 691 So.2d 948, 957 (Miss. 1997)). This Court will only reverse a trial court's decision where there has been an abuse of discretion. Id.
¶ 40. The evidence presented to the jury in Randolph's defense was that the cocaine belonged to Shanks, and Randolph merely attempted to possess one-half gram of cocaine. It is well established that issues of weight and credibility lie with the jury. Eakes v. State, 665 So.2d 852, 872 (Miss.1995) (citing McClain v. State, 625 So.2d 774, 778 (Miss.1993)). Staples, Van Syckel, and Randolph testified before the jury, who apparently found Randolph's testimony only partially credible. This is clear because the jury found that Ran. dolph attempted to possess more than thirty grams of cocaine, rather than the onehalf gram that he claimed. We find that allowing Randolph's conviction to stand will not "sanction an unconscionable injustice." Accordingly, we find no merit to this issue.
10. Cumulative Error
¶ 41. Randolph contends that the cumulative effect of the trial court's errors denied him the right to a fair trial. We disagree. The Mississippi Supreme Court has held that "individual *266 errors, not reversible in themselves, may combine with other errors to make up reversible error." Byrom v. State, 863 So.2d 836, 847(¶ 12) (Miss. 2003) (citing Hansen v. State, 592 So.2d 114, 142 (Miss.1991)). Therefore, we must consider "whether the cumulative effect of all errors committed during the trial deprived the defendant of a fundamentally fair and impartial trial." Id. We find no reversible error, as the harmless errors taken in the aggregate, did not deprive Randolph the right to a fair and impartial trial. This issue lacks merit.
¶ 42. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF ATTEMPTED POSSESSION OF MORE THAN THIRTY GRAMS OF COCAINE AND SENTENCE OF TWENTY YEARS, WITH FIVE YEARS SUSPENDED, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., CHANDLER, GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] The State cites Mississippi Code. Annotated section 63-3-211 (Rev.2004). which regulates the enactment of traffic regulations by local authorities. This section, however, does not prohibit parking on the street in a residential neighborhood.