## IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

### NO. 2016-KA-01267-COA

**HUNTER LANE SARRETT A/K/A HUNTER SARRETT**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

DATE OF JUDGMENT:           07/25/2016
TRIAL JUDGE:                HON. JOHN HUEY EMFINGER
COURT FROM WHICH APPEALED:  RANKIN COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:     DONALD W. BOYKIN
ATTORNEY FOR APPELLEE:      OFFICE OF THE ATTORNEY GENERAL
                            BY: ABBIE E. KOONCE
DISTRICT ATTORNEY:          MICHAEL GUEST
NATURE OF THE CASE:         CRIMINAL - FELONY
DISPOSITION:                AFFIRMED: 12/12/2017
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE GRIFFIS, P.J., BARNES AND FAIR, JJ.**

**GRIFFIS, P.J., FOR THE COURT:**

¶1.     Hunter Lane Sarrett was convicted of Count I, sale of cathinone within 1,500 feet of a school; Count II, conspiracy to sell cathinone; Count III, sale of alprazolam within 1,500 feet of a school; and Count IV, conspiracy to sell alprazolam. He was sentenced to serve sixteen years, with six years suspended, on Count I; twenty years, with ten years suspended, on Count II; sixteen years, with six years suspended, on Count III; and twenty years, with ten years suspended, on Count IV. The sentences were ordered to run concurrently with each other.

¶2.     Upon release, Sarrett was ordered to serve five years on probation under the direct

supervision of the Mississippi Department of Corrections. Sarrett was further ordered to pay $756.50 in court costs, a $1,000 fine, and $300 to the Mississippi Crime Lab.

¶3.     Sarrett now appeals and asserts numerous assignments of error. Upon review, we find no error and affirm.

FACTS AND PROCEDURAL HISTORY

¶4.     On June 18, 2014, the Pearl Police Department arranged a controlled buy in order for Katy Young, a confidential informant, to purchase "molly" and Vicodin from Sarrett.[1] Prior to the drug transaction, Young's car and person were searched and she was equipped with a key fob camera and a body wire. Young was given cash in order to purchase the drugs from Sarrett. The drug transaction occurred at Young's house, where she lived with Sarrett's sister.

¶5.     Young and Sarrett exchanged text messages and spoke on the phone earlier in the day to arrange the meeting. At Sarrett's request, Young met Sarrett at her house, underneath the carport. The drug transaction was recorded on the key fob camera which, according to Young, was "a camera that goes on your key chain . . . like a car remote." For reasons unknown, the body wire placed under Young's clothes did not record the transaction.

¶6.     The key fob camera included both an audio and video recording of the drug transaction. The audio and video recording was admitted into evidence at trial as State's Exhibit 4 and played for the jury. Although poor quality, the conversation between Sarrett and Young can be heard. At the beginning of the audio recording, Sarrett told Young that

_____

[1] "Molly" is a street name for ecstasy.

2

he had "been to ten people's houses" and had to go to "like eight more—business is picking up." Sarrett advised Young that he had Xanax, not Vicodin. He asked Young how many Xanax pills she wanted. When Young inquired as to how many $20 would get her, Sarrett stated he would give her "all of them."

¶7.     Sarrett then confirmed that Young wanted "2 fifteens" and asked whether Young planned to take both of them. When Young stated she intended to keep one and give one to a friend, Sarrett stated that that was fine, and explained that he was able to take two at a time, but likely had a higher tolerance.

¶8.     It is undisputed that the actual drug exchange did not appear on the video. Young testified that Sarrett kept the drugs under the hood of his truck. At the end of the video, Sarrett can be seen standing at the front of his truck.

¶9.     Young explained that she did not know how to turn the key fob camera on or off. She stated that law enforcement turned on the camera prior to the drug transaction. However, Young acknowledged that the camera "died" after Sarrett became visible.

¶10.    Following the drug transaction, Young met with law-enforcement officers and gave them the drugs that she had purchased from Sarrett. Law enforcement searched Young's car and person and removed the recording devices. Moreover, law enforcement showed Young a picture of Sarrett to confirm that he was the individual from whom she had purchased the drugs.

¶11.    Young testified that she did not go inside the house before meeting with law enforcement. She further testified that she had agreed to act as a confidential informant in

3

hopes of having various misdemeanor charges, including a driving-under-the-influence charge, removed from her record.

¶12. Officer Zach Acy, a narcotics investigator with the Pearl Police Department, conducted surveillance of the entire transaction. Acy was parked approximately six houses down from Young's house. He saw Young pull into the driveway, and could see the front of the house as well as the carport. Acy testified that he saw a silver Toyota pickup truck under the carport, which came back registered to Gary Sarrett, Sarrett's father. According to Acy, once Young arrived at the house, the drug buy took approximately two to three minutes. Acy stated he never saw Young enter the house.

¶13. Allison Conville, a chemist in the drug section of the Mississippi Forensics Laboratory, was admitted as an expert in forensic science specializing in drug identification. Conville testified that she had received and tested two submissions. The first submission contained two capsules of ethylone, which is a substituted drug known as cathinone. The second submission contained fourteen tablets of alprazolam, which is also known as Xanax.

¶14. Sarrett's sister, Alyssa, testified on Sarrett's behalf and stated that on June 18, 2014, she and Sarrett were at her house, along with friends Matthew and Amy. According to Alyssa, when Young showed up, Young and Matthew went into the bedroom for about a minute. Young then walked out of the house. However, Victoria May, custodian of records for the Rankin County Sheriff's Department, testified that on June 18, 2014, Matthew was actually in custody in the Rankin County jail, and had been in custody since May 24, 2014.

¶15. A judgment of conviction was entered June 14, 2016. Thereafter, on July 28, 2016,

4

Sarrett was sentenced. On August 4, 2016, Sarrett filed a motion for a judgment notwithstanding the verdict (JNOV) or, alternatively, a new trial. The circuit court denied the motion as untimely. Sarrett subsequently filed a notice of appeal on August 25, 2016.

¶16. On appeal, Sarrett argues: (1) the circuit court erroneously denied his motion in limine regarding other acts, crimes, or wrongs; (2) the prosecutor made inappropriate statements during the State's opening statement and closing argument; (3) counsel's failure to object to the authenticity of certain exhibits constituted ineffective assistance of counsel; (4) there was insufficient evidence to support his conviction on Counts I and II; and (5) the circuit court erred in denying his post-trial motion as untimely.

ANALYSIS

*I.      Motion in Limine Regarding Other Acts, Crimes, or Wrongs*

¶17. Sarrett first claims the circuit court erroneously denied his motion in limine to preclude evidence of other acts, crimes, or wrongs. "The standard of review governing the admission or exclusion of evidence is abuse of discretion." *Williams v. State*, 991 So. 2d 593, 597 (¶8) (Miss. 2008).

¶18. During the recording of the drug transaction, Sarrett stated he had been to "ten people's houses" and had "eight more" to go, followed by the statement "business is picking up." In his motion in limine, Sarrett sought the exclusion of any evidence of "other alleged crimes in which he was suppose to have committed or was going to commit." Sarrett claims that "the prosecution wanted the jury to believe [he] had engaged in past drug sales or past crimes" and therefore moved to exclude these statements under Mississippi Rules of

5

Evidence 403 and 404.

¶19. Interestingly, Sarrett admits the statements heard on the recording say nothing about any prior crime or bad act. The circuit court acknowledged this in its ruling. Specifically, the circuit court stated, "[a]lthough it doesn't really say what [Sarrett] did at those houses or what business it is that's picking up, it still appears to me to be part of the same transaction here . . . ." The circuit court found the statements were part of the same transaction as the drug sale and therefore denied the motion in limine to exclude the statements. Based on our review of the record, we cannot say this was an abuse of discretion.

¶20. Under Rule 404(b)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[w]hen the charged crime and prior crime or bad act are so interwoven as to form a series of occurrences," such evidence may be offered "to tell the complete story so as not to confuse the jury." *Edwards v. State*, 124 So. 3d 105, 113 (¶36) (Miss. Ct. App. 2013) (citation omitted). "The rationale for admitting evidence of certain closely related acts is that the prosecution has a legitimate interest in telling a rational and coherent story of what happened." *Id.* (citation omitted).

¶21. Here, the conversation between Sarrett and Young was a part of a series of occurrences which culminated in Sarrett's arrest. The statements at issue were a part of the entire conversation between Sarrett and Young, and were connected with the crime and included within the same transaction as the drug sale. Thus, we find the admission of the statements did not violate Rule 404(b).

¶22. Additionally, the record shows the circuit court performed a balancing test pursuant to Rule 403. The circuit court reviewed the recording, considered the arguments of counsel, and found the probative value of the evidence did not outweigh any prejudicial effect.

¶23. Overall, we find no abuse of discretion in the circuit court's denial of Sarrett's motion in limine regarding other acts, crimes, or wrongs.

## II. Prosecutorial Misconduct

¶24. Sarrett next claims the prosecutor made improper statements during his opening statement and closing argument. Specifically, Sarrett claims the prosecutor's references to "drops" amounted to prosecutorial misconduct.

¶25. Our standard of review regarding alleged lawyer misconduct during opening statements or closing arguments is "whether the natural and probable effect of the improper argument is to create unjust prejudice against the accused so as to result in a decision influenced by the prejudice so created." *Randolph v. State*, 973 So. 2d 254, 264 (¶29) (Miss. Ct. App. 2007) (citations omitted).

¶26. During opening statements, the prosecutor advised the jury that it would hear Sarrett say, "[b]usiness is picking up" during the transaction with Young, and that he had "done 8 to 10 drops today."

¶27. During closing arguments, the prosecutor stated, in part:

> So what does the State of Mississippi have to prove to you? In each and everyone of these we have to prove that [Sarrett] acted willfully, unlawfully, feloniously, knowingly, intentionally, without authority of law.

> So what does that mean? Basically, that means he meant to do it. It wasn't an accident. This was something he meant to do.

How do we know this is something that he meant to do? Well, we have what's been labeled as State's Exhibit 4. This is the recording of the transaction. So what did [Sarrett] say when he arrived—when Young arrived?

"Business is picking up. Business is picking up." This is a deliberate action by [Sarrett]. "Business is picking up. I've already had eight drops. Got two more."

Then [Sarrett and Young] go to talking about Vicodin, Xanax, two 15s. Willful, unlawful, knowing and intentional.

¶28. Later in his closing argument, the prosecutor again referenced the statement "business is picking up." However, there were no additional references to "drops."

¶29. Sarrett did not object at any point during the State's opening statement or closing argument. Generally, "[i]f no contemporaneous objection is made, the error, if any, is waived." *Stevenson v. State*, 156 So. 3d 927, 930 (¶13) (Miss. Ct. App. 2015) (citation omitted). However, while the failure to contemporaneously object generally waives a claim of prosecutorial misconduct during opening statements or closing arguments, "we will review such a claim if the prosecutor's statement was so inflammatory that the [circuit] judge should have objected on his own motion." *O'Connor v. State*, 120 So. 3d 390, 399 (¶26) (Miss. 2013).

¶30. Here, Sarrett was charged with two counts of sale of a controlled substance and two counts of conspiracy to sell. The jury heard the conversation between Sarrett and Young regarding the drug transaction. The jury was instructed that arguments, statements, and remarks of counsel were not evidence and that if counsel's recollection of the evidence differed from theirs, then they must follow their own recollection. Thus, the jury was able to consider the facts and evidence presented and to recall for itself what Sarrett said or did

not say.

¶31. "There is wide latitude for counsel in both opening and closing arguments, expanding beyond mere facts and proof to include such deductions and conclusions one may reasonably draw therefrom . . . ." *White v. State*, 847 So. 2d 886, 890 (¶12) (Miss. Ct. App. 2002) (citation omitted). "Any statement made must be viewed in context, taking into consideration the circumstances of the case." *McCoy v. State*, 954 So. 2d 479, 488 (¶28) (Miss. Ct. App. 2007) (citation omitted). Considering the context in which the statements were made and the circumstances of the case, we conclude that the prosecutor's references to "drops" were not so inflammatory that the circuit judge should have intervened sua sponte. Accordingly, we find Sarrett waived this issue by failing to object. *See O'Connor*, 120 So. 3d at 400 (¶27).

¶32. Notwithstanding the waiver, we cannot conclude based upon our review of the record that the natural and probable effect of the statements was to create unjust prejudice against Sarrett. *See Randolph*, 973 So. 2d at 264 (¶29). Thus, Sarrett's prosecutorial-misconduct claim fails.

> III.     *Ineffective Assistance of Counsel Regarding the Authentication of Exhibits*

¶33. Sarrett asserts State's Exhibits 4, 12, and 13 were admitted into evidence without proper authentication.[2] Defense counsel did not object to the admission of the exhibits. Sarrett claims his counsel's failure to object constituted ineffective assistance of counsel.

¶34. To prove ineffective assistance of counsel, Sarrett must show: (1) his counsel's

---

[2] Exhibit 4 is the video and audio recording of the drug transaction between Young and Sarrett. Exhibit 12 is a slow-motion version of Exhibit 4. Exhibit 13 is a still-image photograph taken from Exhibit 12.

performance was deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "We look at the totality of the circumstances to determine whether counsel's [performance was] both deficient and prejudicial." *Dartez v. State*, 177 So. 3d 420, 423 (¶19) (Miss. 2015). "[A] presumption exists that an attorney's performance falls within the wide range of reasonable professional assistance and that the decisions made by trial counsel are strategic." *Braggs v. State*, 121 So. 3d 269, 273 (¶11) (Miss. Ct. App. 2013). "Only where it is reasonably probable that, but for the attorney's errors, the outcome would have been different, will we find that counsel's performance was deficient." *Dartez,* 177 So. 3d at 423 (¶19).

¶35.    "[G]enerally, ineffective-assistance-of-counsel claims are more appropriately brought during post-conviction proceedings." *Bell v. State*, 202 So. 3d 1239, 1242 (¶12) (Miss. Ct. App. 2016). This Court may address ineffective-assistance-of-counsel claims on direct appeal only where: "(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate and the Court determines that findings of fact by a trial judge able to consider the demeanor of witnesses, etc., are not needed." *Id.*

¶36.    Whether Sarrett's trial counsel should have objected to the admission of the exhibits involves facts not fully apparent from the record before us. Additionally, the parties have not stipulated that the record is adequate. Thus, we are unable to adequately and properly address Sarrett's ineffective-assistance-of-counsel claim on direct appeal. If he chooses, Sarrett may apply for the Mississippi Supreme Court's leave to assert and argue this claim

through a petition for post-conviction collateral relief. *See* Miss. Code Ann. § 99-39-7 (Rev. 2015).

> IV.     *Sufficiency of the Evidence as to Counts I and II*

¶37.    Sarrett argues "there is considerable doubt [that] the substance [Conville] tested was [c]athinone or some substance unlisted as a controlled substance." Thus, Sarrett claims there was insufficient evidence to support his convictions on Counts I and II.

¶38.    In considering whether the evidence is sufficient to sustain a conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Williams v. State*, 35 So. 3d 480, 485 (¶16) (Miss. 2010) (citations omitted). Where the facts and inferences "point in favor of the defendant on any element of the offense with sufficient force that reasonable [jurors] could not have found beyond a reasonable doubt that the defendant was guilty," the proper remedy is to reverse and render. *Id*. However, if "reasonable fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions on every element of the offense," the evidence will be deemed to have been sufficient. *Id*.

¶39.    The record shows Sarrett did not object during Conville's testimony regarding the identification of cathinone. Moreover, Sarrett did not raise the issue in his motion for a directed verdict or his post-trial motion for a JNOV or a new trial. Instead, Sarrett raised the issue for the first time on appeal. "Issues raised for the first time on appeal and not contemporaneously objected to at trial are waived." *McCain v. State*, 971 So. 2d 608, 612

11

(¶7) (Miss. Ct. App. 2007). Notwithstanding the waiver, we find sufficient evidence was presented to support Sarrett's convictions on Counts I and II.[3]

¶40. Conville testified that the two capsules she tested "contained ethylone." Conville explained that ethylone is "a substituted drug known as [c]athinone." When asked to describe cathinone, Conville testified as follows:

> Cathinone is just a group of drugs based on the same structure [as ecstasy]. And if you've ever seen the chemical structure, it's kind of like a hexagon and you can—each one of those points you can put different chemicals on there and then those become different drugs. This is one of those drugs and there are several compounds that are greatly used and [c]athinone is one of them that they can change to make different drugs.

Conville confirmed that cathinone was a Schedule I controlled substance.

¶41. At no time prior to or during trial did Sarrett question or challenge Conville's identification of the two capsules as cathinone. Instead, Sarrett focused on the fourteen tablets of Xanax and whether Conville had in fact tested all fourteen tablets.

¶42. Considering the evidence in the light most favorable to the prosecution, we find sufficient evidence was presented to show that the substance in evidence and tested by Conville was cathonine, a Schedule I controlled substance. Thus, this issue is without merit.

V. *Post-trial Motion*

¶43. Sarrett last claims the circuit court erroneously denied his post-trial motion for a JNOV or a new trial as untimely. A motion for a JNOV is subject to the same time limit as a motion for a new trial. *Conwill v. State*, 168 So. 3d 1080, 1084 (¶19) (Miss. Ct. App.

---

[3] Sarrett does not claim the State failed to prove that the sale or conspiracy occurred. Instead, Sarrett claims "there was insufficient proof the substance was [c]athinone."

2013). A motion for a new trial "must be made within ten days of the entry of judgment." *Id.* (quoting URCCC 10.05 (replaced by MRCrP 25.1(c))).

¶44. Here, Sarrett's judgment of conviction was entered June 14, 2016. Thus, to be timely, Sarrett would have had to file his motion for a JNOV or a new trial within ten days of that date, or June 24, 2016. *Id*. However, Sarrett did not file his motion until August 4, 2016, over fifty days later. Consequently, Sarrett did not timely file his post-trial motion.[4]

¶45. Sarrett further claims "it was error for the [circuit] judge to deny him a hearing on his post-trial motion under the proposition that [it was] untimely filed." However, the record shows a hearing was held on the post-trial motion and, despite its untimeliness, Sarrett was allowed to proffer his argument on the motion. Thus, we find this issue meritless.

CONCLUSION

¶46. Upon review, we find Sarrett's claims on appeal are without merit. Accordingly, we affirm the circuit court's judgment.

¶47. **AFFIRMED.**

**LEE, C.J., IRVING, P.J., CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. BARNES, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

[4] Since Sarrett failed to timely file his post-trial motion, the time for filing a notice of appeal was not tolled. *See id.* at (¶18) (while a timely motion for a JNOV tolls the running of the time to file a notice of appeal, an untimely motion does not). Nevertheless, Sarrett timely filed his notice of appeal within thirty days of the imposition of sentence, as required by Rules 4(a) and (e) of the Mississippi Rules of Appellate Procedure.