# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00292-COA

IRVIN A. PAYNE A/K/A IRVIN ANDREW PAYNE                 APPELLANT

v.

STATE OF MISSISSIPPI                                           APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 06/23/2017 |
| TRIAL JUDGE: | HON. ROGER T. CLARK |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: HUNTER NOLAN AIKENS GEORGE T. HOLMES |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: KATY TAYLOR GERBER JOSEPH SCOTT HEMLEBEN JASON L. DAVIS BARBARA BYRD |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 06/18/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE J. WILSON, P.J., McCARTY AND C. WILSON, JJ.**

**C. WILSON, J., FOR THE COURT:**

¶1.     A grand jury for the First Judicial District of Harrison County indicted Irvin Andrew Payne ("Payne") for unlawful possession of a firearm by a convicted felon (Count I) and possession of a controlled substance (Count III).  After a jury trial, the jury found Payne guilty on both counts.  The trial court sentenced Payne to serve ten years on Count I and three

years on Count III, to run consecutively for a total of thirteen years in the custody of the Mississippi Department of Corrections ("MDOC"). Following the denial of Payne's motion for a judgment notwithstanding the verdict ("J.N.O.V.") or alternatively a new trial, Payne appealed, raising two issues: (1) whether Count III of the indictment was defective; and (2) whether Payne received ineffective assistance of counsel.[1] After a thorough review of the record, we reverse Payne's conviction and sentence on Count III of the indictment, render a judgment dismissing that count, and deny Payne's ineffective-assistance-of-counsel claim without prejudice to his right to file a separate motion for post-conviction relief.

**FACTS**

¶2.    On February 9, 2015, narcotics officers Sergeant Aaron Fore ("Fore") and Detective Thomas King ("King") of the Gulfport Police Department were patrolling the 20th Street and 31st Avenue area in Gulfport, Mississippi, in response to citizen complaints about drug activity.

¶3.    Around 7:25 p.m., Fore and King were traveling northbound on 31st Avenue, a two-lane residential street, when they noticed a purple 1995 Chevrolet Lumina ("Lumina") parked facing northbound in the southbound lane. A man was standing near the Lumina talking to the occupants, but he quickly turned and walked away upon seeing the officers' patrol vehicle. The Lumina's driver then merged into the correct lane (the northbound lane) in front of the officers and immediately turned right onto 21st Street without using a turn signal.

---

[1] Payne does not directly challenge the indictment or sufficiency of the evidence with respect to his conviction for unlawful possession of a firearm by a convicted felon (Count I). Thus, we affirm in part on this issue. M.R.A.P. 28(a)(7).

2

¶4.   Fore and King proceeded to follow the Lumina onto 21st Street, and King activated the patrol vehicle's blue lights to conduct a traffic stop for failure to give a turn signal. The driver did not stop the Lumina, but instead made a right turn onto 30th Avenue at the next intersection. At that point, King activated the sirens and continued to follow the Lumina onto 30th Avenue. While traveling down this well-lit street, Fore saw one of the Lumina's occupants throw an unknown object out of the front-passenger window. After a short distance, the Lumina's driver made another right turn onto 20th Street and finally came to a stop.

¶5.   King exited the patrol vehicle—with Fore a few steps behind—and approached the Lumina's passenger side. King testified that he smelled the odor of marijuana coming from the Lumina. When King looked through the rear passenger window, he saw "a large rifle laying on the center console, muzzle facing forward, stock to the rear." The driver of the Lumina, later identified as Payne, had his arm on top of the rifle as though he was trying to hide the rifle or push it away. King shouted, "Gun!" to Fore, who was approaching the Lumina from the driver's side, and he instructed the Lumina's occupants to put their hands where he could see them. King then opened the rear passenger door, retrieved the rifle, and put it on top of the Lumina's trunk. Fore took the gun and secured it in the patrol vehicle. By that time, Detectives Larry McCook, Jr. ("McCook") and Joey Weust ("Weust") had arrived at the scene.

¶6.   After securing the rifle, King "pulled both of the occupants out of the vehicle [] [and] detained them in order to do a probable cause search" on the basis of the odor of marijuana

3

emanating from the Lumina.  King then left the scene to look for the item that was thrown from the passenger window; he found nothing and returned to the scene of the traffic stop. Meanwhile, McCook searched Payne and found a small plastic bag containing a "milky, rock-like substance" in Payne's pocket.  McCook turned the bag over to King, who logged the substance into evidence and sent it to the crime lab for testing.

¶7.    The officers arrested both Payne and Latrevia Donwell ("Donwell"), Payne's passenger in the Lumina.  A grand jury for the First Judicial District of Harrison County indicted Payne for unlawful possession of a firearm by a convicted felon (Count I) and possession of a controlled substance (Count III).[2]  The indictment alleged "ETHYLONE" as the Schedule I controlled substance that Payne illegally possessed.

¶8.    At trial, Payne testified in his own defense.  Regarding Count I, Payne repeatedly denied knowing about or seeing a rifle in the car or that a rifle was next to him or on the center console at any point in time.  But Fore testified that he looked into the back seat and saw "the butt stock of a rifle on top of the center console sticking behind the driver into the backseat compartment."  King also testified that the rifle was "laying directly on top of the center console between the driver and passenger" and added that "none of it [i.e., the rifle] was in the back seat.  It was all on top of the center console."  Both Fore and King testified that Payne's arm was on top of the rifle when King secured it.[3]

---

[2] Donwell was charged with unlawful possession of a firearm by a convicted felon (Count II).

[3] King's testimony further suggested that Donwell confirmed the rifle was on the center console and that the only person to say the rifle was not there was Payne.

4

¶9. As for Count III, Payne admitted the drugs found in his pocket at the traffic stop were his. He testified that he obtained the drugs at a motel in Gulfport before Fore and King pulled him over, and that he believed the drugs to be "MDMA," which is more commonly known as ecstasy—a Schedule I controlled substance. Payne also testified he knew the drugs were illegal.

¶10. Laura Faulks ("Faulks"), a drug analyst with the Mississippi Forensics Laboratory, testified as an expert in the field of drug analysis. Faulks performed a chemical analysis on the substance the police recovered from Payne's pocket. At trial, she testified that (1) her analysis "detected the compound ethylone in the sample"; (2) the sample weighed 0.16 grams; and (3) ethylone is a Schedule I controlled substance that has "many names," including "methylenedioxymethcathinone" or "beta keto MDEA." Faulks did not provide any other names for the substance or establish ethylone as MDMA or any other enumerated Schedule I controlled substance.

¶11. After trial, the jury found Payne guilty of both counts. The trial court sentenced Payne to serve ten years on Count I and three years on Count III, to run consecutively for a total of thirteen years in the custody of the MDOC. Payne subsequently filed a motion for a J.N.O.V. or alternatively a new trial. In his post-trial motion, Payne contended that the trial court erred when it denied Payne's motion to suppress evidence procured from the warrantless stop and search of the Lumina on February 9, 2015, and when it denied Payne's motion for a directed verdict on the basis that Payne had knowledge of the rifle found in the Lumina.

¶12. Payne timely filed his notice of appeal on February 26, 2018. He raises two issues on

appeal: (1) whether Count III of the indictment was defective; and (2) whether Payne received ineffective assistance of counsel. We address each issue in turn.

## DISCUSSION

### I. Whether Count III of the indictment was defective.

¶13. Whether an indictment is fatally defective is an issue of law and deserves a relatively broad standard of review. The legal sufficiency of an indictment must be reviewed de novo. *Young v. State*, 119 So. 3d 309, 313 (¶10) (Miss. 2013). Objections to the sufficiency of an indictment may be raised for the first time on appeal, because the sufficiency of an indictment is a matter of jurisdiction. *Williams v. State*, 169 So. 3d 932, 935 (¶8) (Miss. Ct. App. 2014); *see also Durr v. State*, 446 So. 2d 1016 (Miss. 1984).

¶14. Count III of the indictment charged Payne with "knowingly, willfully, unlawfully and feloniously possess[ing] 0.1 grams or more but less than 2.0 grams of ETHYLONE, a SCHEDULE I Controlled Substance . . . ." Payne asserts that because "ethylone" is not listed in Schedule I of the Controlled Substances Act, the indictment is defective and thus void for failing to charge a crime.

¶15. In support, Payne relies on *Brewer v. State*, 351 So. 2d 535 (Miss. 1977), and *Copeland v. State*, 423 So. 2d 1333 (Miss. 1982). In *Brewer*, Brewer was convicted for delivery of a controlled substance. The indictment charged that Brewer and others "did unlawfully, willfully and feloniously, without authority of law deliver . . . a certain controlled substance, to-wit: preludin." *Brewer*, 351 So. 2d at 536. Brewer did not initially challenge the indictment but moved to dismiss the charges at the conclusion of the state's case on the

ground that the indictment failed to charge him with the delivery of a substance listed in the statutory schedule. Evidence at trial showed that preludin contained phenmetrazine, a substance listed in Schedule II of the Controlled Substances Act. *Id*. The trial judge overruled Brewer's motion to dismiss and required the state to amend the indictment to set forth the fact that preludin contained phenmetrazine.

¶16. On appeal, Brewer contended that the indictment was not amendable because it failed to charge a crime. The supreme court agreed. In reversing, the supreme court noted that Mississippi Code Annotated section 99-7-21 (Rev. 1972), which provides that indictments may be amended to correct "any formal defect," applies only to matters of form and not substance, and that the omission complained of was one of substance. The court then reaffirmed:

> Every material fact and essential ingredient of the offense—every essential element of the offense—must be alleged with precision and certainty, or, as has been stated, every fact which is an element in a prima facie case of guilt must be stated in the indictment.

*Id*. at 536. In sum, *Brewer* instructs that a substantive defect in an indictment cannot be cured by extrinsic proof and is not waived by the failure to demur. The *Brewer* court held that because an essential element of the indictment was omitted—*i.e.*, that preludin contained phenmetrazine, and because such omission was an omission of substance, the indictment was invalid and failed to charge a crime. *Id*. at 537 ("[A] comparison of the indictment to the criminal statute would not disclose that a crime was charged.").

¶17. Similarly, in *Copeland*, the indictment charged Copeland with selling "a quantity of methylenedioxy amphetamine, a controlled substance." *Copeland*, 423 So. 2d at 1336. On

7

appeal, Copeland argued that the indictment did not charge a crime and was void since "methylenedioxy amphetamine," as distinguished from "3,4 methylenedioxy amphetamine," is not a controlled substance. *Id*. Relying on *United States v. Huff*, 512 F.2d 66 (5th Cir. 1975), the *Copeland* court found that the addition of the numbers "3,4" would have saved the indictment. The court noted that the defect was more than a mere technicality, as the chemical and legal definitions of the substances at issue required technical precision. *Copeland*, 423 So. 2d at 1336. Thus, relying on *Brewer* and *Huff*, the *Copeland* court held that the indictment at issue failed to charge a crime and was therefore void. *Id*. at 1336-37.

¶18. Here, the indictment charged Payne with "knowingly, willfully, unlawfully and feloniously possess[ing] 0.1 grams or more but less than 2.0 grams of ETHYLONE, a SCHEDULE I Controlled Substance . . . ." At trial, Faulks testified that ethylone is a Schedule I controlled substance that has "many names," including "methylenedioxymethcathinone" and "beta keto MDEA." But "ethylone" is not listed in Schedule I of the Controlled Substances Act—nor are the other two names Faulks gave. *See* Miss. Code Ann. § 41-29-113 (Rev. 2013). The Act lists, among other substances, substances that are similar to the ones that Faulks listed: "3,4-methylenedioxy-N-ethylamphetamine (also known as . . . MDEA)," and "3,4-methylenedioxy-N-methylcathinone (methylone)." Miss. Code Ann. § 41-29-113 (c)(12), (48) (Rev. 2013). But following *Brewer* and *Copeland*, it is insufficient for an indictment merely to allege an unlisted pseudonym for a controlled substance actually listed on the schedule then leave it to the jury to connect the dots. The indictment's failure to name a Schedule I substance is

8

thus a defect of substance—not form.

¶19. Here, the proof offered by the State failed to connect the dots—i.e., to show that ethylone is, or at least contained, a substance or compound enumerated on the statutory schedule. Faulks testified that ethylone is a controlled substance, but she did not explain how the substance Payne possessed matched any statutorily enumerated controlled substance.[4] Payne testified that he believed he possessed MDMA, a synthetic form of ecstasy, but the State offered no proof that ethylone, as charged in the indictment, equated to MDMA. Thus, our review of the record leaves unclear exactly what controlled substance Payne possessed. Under the precedent set forth in *Brewer* and *Copeland*, which we are bound to follow, Payne's indictment on this matter fails to charge a crime.

¶20. An indictment is sufficient if it tracks the language of the statute under which it is being drawn. *King v. State*, 580 So. 2d 1182 (Miss. 1991); *Cantrell v. State*, 507 So. 2d 325 (Miss. 1987). But to be sufficient, an indictment must set forth the constituent elements of a criminal offense. *Thomas v. State*, 126 So. 3d 877, 879 (¶7) (Miss. 2013) ("An indictment which fails to allege all essential elements of a crime runs afoul of our constitutions and is

---

[4] Faulks testified that ethylone is a Schedule I controlled substance that has "many names," though she gave only two in the record: "methylenedioxymethcathinone" and "beta keto MDEA." Neither of these names appear on Schedule I, *see* Miss. Code Ann. § 41-29-113, though the statutory schedule lists several *similar* substance names, including "3,4-methylenedioxy-N-ethylamphetamine (also known as . . . MDEA)," "3,4-methylenedioxy-N-methylcathinone (methylone)," and "methcathinone." Following *Copeland* and the other authority discussed herein, "similar" is not sufficient, as chemical and legal definitions of substances require technical precision. *Copeland*, 423 So. 2d at 1336; *cf. Sarrett v. State*, 250 So. 3d 477, 485 (¶¶40-42) (Miss. Ct. App. 2017) (affirming conviction under indictment charging possession of "cathinone" where expert in forensic drug testing concluded that "two capsules she tested contained ethylone" but offered further testimony that, based on chemical structure, "ethylone is a substituted drug known as [c]athinone").

void."). Thus, an indictment that fails to charge a crime is void, and the failure to do so is a plain, constitutional error which requires dismissal of the indictment and reversal of the conviction. *Copeland*, 423 So. 2d at 1337; *see also Thomas*, 126 So. 3d at 880. Because possession of a *controlled substance* is an essential element of the crime, and because the indictment failed to allege that Payne possessed an enumerated Schedule I controlled substance, we reverse Payne's conviction and sentence on Count III of the indictment and render a judgment dismissing that count. *See* Miss. Code Ann.§ 41-29-113.[5]

**II.      Whether Payne received ineffective assistance of counsel.**

¶21.    Payne asserts trial counsel was ineffective in three respects: (1) by failing to stipulate to Payne's status as a prior convicted felon and instead stipulating to the admission of Payne's prior three-count indictment and sentencing order; (2) by opening the door and failing to object to King's testimony that Donwell told police the gun was on the center console; and (3) by failing to object or demur to Count III of the indictment as defective.[6] For the reasons explained below, we deny Payne's ineffective-assistance-of-counsel claim without prejudice to his right to seek relief in a properly filed petition for post-conviction

---

[5] The dissent focuses on proof at trial, including Payne's own testimony, that Payne "knew he had an illegal substance in his pocket," *post* ¶28, to conclude that "the jury heard sufficient testimony that ethylone (the substance listed in the indictment) is known by many names and is a schedule I controlled substance," *id.* at ¶30. Even as the dissent frames it, "[t]he question is, which Schedule I controlled substance did Payne actually possess?" *Id.* at ¶29. Our review of the record leaves that question unanswered, but the binding precedent discussed herein requires sufficient proof of "the particular substance" possessed in order to sustain a conviction. *O'Donnell v. State*, 173 So. 3d 907, 916 (¶22); *see Copeland*, 423 So. 2d at 1337; *Brewer*, 351 So. 2d at 537.

[6] Our reversal of Payne's conviction for possession of a controlled substance moots his contention here regarding Count III of the indictment.

relief.

¶22. Generally, this Court does not consider claims of ineffective assistance of counsel on direct appeal because "there is usually insufficient evidence within the record to evaluate the claim." *Pustay v. State*, 221 So. 3d 320, 350 (¶97) (Miss. Ct. App. 2016). This Court will "only consider an ineffective-assistance-of-counsel claim on direct appeal when: (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge." *Nelson v. State*, 222 So. 3d 318, 322 (¶5) (Miss. Ct. App. 2017). Because neither party stipulates to the record's adequacy on this point, we must determine whether the record affirmatively shows ineffectiveness of constitutional dimensions. *See Williams v. State*, 228 So. 3d 949, 952 (¶12) (Miss. Ct. App. 2017).

¶23. To establish his ineffective-assistance-of-counsel claim, Payne must prove, under the totality of the circumstances, that (1) his defense counsel's performance was deficient, and (2) his counsel's deficient performance was prejudicial to his defense. *Ravencraft v. State*, 989 So. 2d 437, 443 (¶31) (Miss. Ct. App. 2008) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). In this regard, trial counsel's performance is deficient if it falls "below an objective standard of reasonableness"; however, Payne "faces a rebuttable presumption that his attorney's conduct is within the wide range of reasonable conduct and that his attorney's decisions were strategic." *Strickland*, 466 U.S. at 688; *Ravencraft*, 989 So. 2d at 443 (citing *Edwards v. State*, 615 So. 2d 590, 596 (Miss. 1993)). Payne must show that, but for his trial

11

attorney's errors, there is "a reasonable probability" a different result would have been reached at trial. *Stringer v. State*, 627 So. 2d 326, 329 (Miss. 1993).

¶24. With this standard in mind, our review of the record indicates that Payne's assignment of error as to alleged ineffective assistance of counsel is beyond the contents of the record—the record does not affirmatively show ineffectiveness of constitutional dimensions. Thus, we deny Payne's ineffective-assistance-of-counsel claim without prejudice to his right to file a motion for post-conviction relief.

## CONCLUSION

¶25. Because the indictment charged Payne with possession of a controlled substance but failed to identify an enumerated Schedule I controlled substance, the indictment regarding Count III fails to charge a crime and is void. We therefore reverse Payne's conviction and sentence on Count III and render a judgment dismissing that count. Further, we deny Payne's ineffective-assistance-of-counsel claim without prejudice to his right to file a motion for post-conviction relief.

¶26. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**BARNES, C.J., CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD AND McCARTY, JJ., CONCUR. LAWRENCE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.**

**LAWRENCE, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶27. I concur with the majority's decision to affirm Payne's conviction as to Count I and dissent with the majority's decision to reverse Payne's conviction for possession of a controlled substance as to Count III. In Count III of the indictment, it was alleged that the

defendant possessed a Schedule I controlled substance, "Ethylone." On appeal, Payne argues that, because Ethylone is not specifically listed in Mississippi Code section 41-29-113 (Rev. 2013), his conviction should be reversed.

¶28. Payne testified that he purchased drugs the same day he was arrested, and he admitted that the drugs found in his pocket at the traffic stop were his. He also admitted that he knew the drugs in his pocket were "MDMA" and that MDMA was an "illegal substance." On direct examination, Payne testified to the following:

> Q: Now, you just stated just a second ago that officers did, in fact, find drugs in your pocket, correct?
>
> A: Correct.
>
> Q: Okay. And do you know what type of drugs those were?
>
> A: MDMA.
>
> Q: Okay. And you knew that that was an illegal substance, correct?
>
> A: Correct.

In addition, on cross-examination, Payne again testified he knew he had an illegal substance in his pocket.

¶29. Pursuant to Mississippi Code Annotated section 41-29-113(c)(11), MDMA is a schedule I controlled substance. It is clear from the defendant's own words that he was under the impression the substance found in his pocket was a Schedule I controlled substance. Payne apparently thought he purchased MDMA, when he in fact purchased

13

MDEA.[7]  Payne's admissions were certainly admissible evidence to support his possession of a Schedule I controlled-substance conviction as charged in Count III.[8]  The question is which Schedule I controlled substance did Payne actually possess.

¶30.    As stated above, in Count III of Payne's indictment it was alleged that "[Payne] did knowingly, willfully, unlawfully and feloniously possess 0.1 grams or more but less than 2.0 grams of ETHYLONE, a Schedule I Controlled Substance . . . ."  The indictment provided the requisite statutory information by specifying that Payne was charged with knowingly possessing"0.1 grams or more but less than 2.0 grams of . . . a Schedule I Controlled Substance."  The majority reasoned that the word "ethylone" is not listed in Mississippi Code section 41-29-113 under Schedule I.  The majority is correct in that determination.  The word Ethylone is not set out expressly in the statute. However, the molecular makeup and alternate names of controlled substances are not common knowledge and are often the subject of expert testimony.   The same holds true for testing and identifying those controlled substances.   At trial, the State moved that Laura Faulks "be deemed an expert in drug analysis."  The defense replied, "No objection, judge."  Faulks testified to the following:

> Q:    Okay.  Now, before I mess up calling this what it is, it's ethylone, correct?
>
> A:    Correct.
>
> Q:    Do you know what the street name of that is?

---

[7] It is common for defendants to think they have purchased one particular type of controlled substance when, in fact, they have been sold a different but equally as illegal controlled substance.

[8] *Duncan*, 240 So. 3d 523 (¶20); *O'Donnell*, 173 So. 3d at 916 (¶22)

A: There are many names for it.

Q: Or a couple of them, anyway?

A: One of the names is methylenedioxymethcathinone. One of the names is beta keto **MDEA**.

(Emphasis added). MDEA is a substance expressly prohibited under Mississippi Code Annotated section 41-29-113. The jury found Payne "guilty of Possession of [a] Controlled Substance, Count III," and that finding was supported by the testimony of the expert drug analyst. While it may have been better to have a more thorough explanation, I would find that the jury heard sufficient testimony that ethylone (the substance listed in the indictment) is known by many names and is a Schedule I controlled substance. Further, the expert testified that one of the many names of ethylone is MDEA, a substance that is expressly listed in the statute. I would find the verdict of the jury was sufficiently supported by the testimony. Accordingly, although I concur in part regarding the majority's decision to affirm Payne's conviction as to Count I, I respectfully dissent from the decision to reverse as to Count III.